JAMES FEELEY *vs.* BRIDGET DOYLE.

Worcester.    October 5, 1915. — October 16, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant. Negligence,* Of one controlling real estate, *Res ipsa loquitur.*
*Evidence,* Presumptions and burden of proof.

One who is eating ice cream as a customer in an "ice cream parlor" is a person whose use of the premises was contemplated by the proprietor and his landlord when the premises were let to such proprietor, and consequently has the same right that such proprietor has not to have a shower of bricks and an iron plate suddenly come down on him owing to the negligent way in which an iron post has been substituted for a section of a chimney that formerly passed through the room.

Where a landlord agrees with a tenant, who conducts an "ice cream parlor," to substitute an iron post for the portion of a chimney that passes through the premises and has the work done, the fact, that the tenant agrees to pay and does pay for the expense of making the change instead of paying an increased rent which otherwise he would have had to pay, does not absolve the landlord from liability to the tenant for the consequences of making the change negligently, the payment by the tenant of the expense of substituting the post for the section of the chimney being in legal contemplation a payment of rent.

In a room used as an "ice cream parlor," where an iron post has been substituted for the part of a chimney that formerly passed through the room and on top of the iron post has been placed an iron plate to support the part of the chimney above the room, if the post suddenly slips off another iron plate beneath it and goes down through the floor to the cellar and the iron plate above and a shower of bricks come down on a customer who is eating ice cream at a marble topped table, the happening of this accident is in itself evidence of some fault in the construction by which the post was substituted for a section of the chimney. In the present case there also was the testimony of an expert that if the iron post had been "properly put in" it would not have fallen.

LORING, J. The plaintiff went into "the ice cream parlor" of one Pano, ordered some ice cream and sat down at a marble topped table near an iron post. While he was eating the ice cream a shower of bricks and an iron plate came down on top of him. This action is brought against Pano's landlord to recover compensation for that injury.

The jury were warranted in finding the following facts: The accident happened in March, 1912. Pano became a tenant of the store some three or four years before. When he became a tenant of the "parlor" a brick chimney ran up through the middle of it. About a year and a half before the accident Pano, thinking that the chimney hurt the appearance of the place as an "ice cream parlor," asked the defendant to substitute an iron post for the chimney. At that time Pano was paying a rent of $15 a month. Just before that time the defendant told Pano that she should raise his rent to $20 a month. It finally was agreed that Pano should pay for the expense of substituting the iron post for the chimney, and that in consideration thereof the rent should not be increased. Under this arrangement the defendant's agent had the work done.

When the shower of bricks and the iron plate fell they broke the marble topped table at which the plaintiff was sitting, and to quote Pano's testimony, "the iron post went down through the floor to the cellar floor with the top of the post projecting through

the floor, and the iron plate which formerly supported the post was tilted against the post, partly in the store and partly in the cellar." When the iron post was substituted for that part of the chimney which went through Pano's store an iron plate was placed upon the top of that part of the chimney which began in the cellar and reached the floor of Pano's store. The iron post was placed on that iron plate. At the top of the iron post and on a level with the ceiling of Pano's store another iron plate was placed to support the chimney above that point. It is evident from the testimony of Pano that for some reason the iron post slipped off the iron plate on which it rested, and went down through the floor, leaving the top of it projecting above the floor, and "the iron plate which formerly supported the post tilted against the post, partly in the store and partly in the cellar." The dimensions of this plate were sixteen by twenty inches.

1. It is true, as the defendant contends, that the plaintiff had no greater rights than Pano.

2. But it is not true, as she further contends, that the plaintiff did not have the rights which Pano had as against the defendant landlord. She contends that this case comes within *Thomas* v. *Lane*, 221 Mass. 447. But that is not so. *Thomas* v. *Lane* was a case where repairs had been made gratuitously by a landlord upon the tenant's request. The decision in *Thomas* v. *Lane* was that in such a case one not a party to the contract by which the repairs were gratuitously made could not recover for negligence in making them. But the case at bar is not a case of gratuitous repairs. The jury were warranted in finding that the repairs were made by the defendant and were made by her in order to induce Pano to continue his tenancy of the demised premises. Pano paid for the repairs. But the jury were warranted in finding that he paid for them in consideration of his rent not being raised. If that were found to be the fact the payment for the repairs in legal contemplation was a payment of rent. The case, therefore, is one where during the tenancy a change is made in the demised premises by a landlord as one of the terms by which the lease is to be continued in effect. Under these circumstances the right of recovery is not limited to the tenant but includes all persons who within the contemplation of the landlord and the tenant were to use the premises under the lease. In the case of an "ice cream parlor,"

that includes persons who enter the premises to buy ice cream. In other words the case is governed by *Domenicis* v. *Fleisher*, 195 Mass. 281, not by *Thomas* v. *Lane, ubi supra.*

3. What we have said disposes of the defendant's other contention, namely, that this case comes within *Mackey* v. *Lonergan*, 221 Mass. 296, 298. That was a case in which the tenant took the premises as they were when his tenancy began and for that reason he could not complain of a defect which existed at that time. As we already have pointed out, this is a case where during the tenancy a change was made by the landlord in order to induce the tenant to continue his lease.

4. It is plain that in the ordinary experience of mankind the accident would not have happened without fault in the construction of the structure which began as a brick chimney, continued as an iron post and ended as a brick chimney. The case therefore is a case where the doctrine of *res ipsa loquitur* applies. See *Minihan* v. *Boston Elevated Railway*, 197 Mass. 367; *Cleary* v. *Cavanaugh*, 219 Mass. 281. In addition there was testimony of an expert to the same effect, namely, that if the construction of this erection was "properly put in" it would not have fallen.

We are of opinion that the case should have been submitted to the jury. By the terms of the stipulation contained in the report * the entry must be

*Judgment on the verdict.*

*D. F. Gay*, for the defendant.
*C. F. Campbell*, (*J. C. Donnelly* with him,) for the plaintiff.

---

* The case was tried before *King*, J. The jury returned a verdict for the plaintiff in the sum of $800, and by agreement of the parties the judge reported the case for determination by this court, with the stipulation that, if the case should have been submitted to the jury, judgment was to be entered for the plaintiff in the amount of the verdict; otherwise, judgment was to be entered for the defendant.