MARCIA CALWAY *vs.* WILLIAM SCHAAL & SON, INCORPORATED, ET AL.

Third Judicial District, Bridgeport, April Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued April 21st—decided July 29th, 1931.

*Harry R. Cooper,* for the appellant (plaintiff).

*Daniel D. Morgan,* with whom, on the brief, were *Philip Pond* and *Joseph B. Morse,* for the appellee (defendant The Home National Bank).

*William B. Gumbart* and *Charles A. Watrous,* for the appellee (defendant William Schaal & Son, Incorporated).

MALTBIE, C. J. The plaintiff in the late afternoon of December 24th, 1929, fell upon a public sidewalk in front of premises in Meriden owned by the defendant The Home National Bank and leased by it to the defendant William Schaal & Son, Incorporated. The sidewalk was built up to the wall of the building and sloped slightly toward the street. Above and projecting over it was a coping along the front of the building and a cornice forming a part of the roof. The plaintiff claimed to have slipped on ice upon the walk formed by the freezing of water caused by drippings from the melting of snow accumulated upon these projections. The complaint, which lacked that precision which is desirable, particularly in a trial to the jury, presents a fourfold aspect. It alleges negligence in allowing snow to accumulate upon the roof and coping of the building, so that it melted and dripped upon the sidewalk, there to freeze; negligence in not making some provision in the construction of the building which would have prevented the water dripping upon the sidewalk; maintenance of a nuisance consisting of the construction of the building in such a way that such dripping naturally resulted; and negligence in failing to take steps to protect passersby from the dangerous condition upon the sidewalk due to the ice upon it.

This being an appeal from the refusal to set aside a nonsuit, that refusal cannot be sustained if, taking the evidence in its most favorable light to the plaintiff, strengthened by every reasonable inference, it afforded any substantial support to the allegations of the complaint. *Baggish* v. *Offengand*, 97 Conn. 312, 320, 116 Atl. 614. It cannot be denied that there was evidence that the plaintiff fell by reason of slipping upon ice formed upon the sidewalk from water which was caused by the melting of snow upon, and which

dripped from, the projections upon the front of the building; and that the snow had fallen the day before, and melted and dripped during the next day. There was also evidence from which the jury might reasonably conclude that water usually did drip from the projections in storms and would drip from melting snow accumulated upon them. From that they might reasonably have inferred knowledge of the condition upon the part of the persons in charge of the building. The tendency of water falling upon a sidewalk in the winter season to freeze and produce a condition dangerous to passersby is of course familiar to every person. Whether in the situation presented by the evidence reasonable care required those in charge of the building to take steps to prevent the water dripping upon the sidewalk from an accumulation of snow upon the coping and cornice, either by clearing it off or by affording means by which the water would be drained away, would, upon the evidence as it stood when the nonsuit was granted, be a question upon which the plaintiff had a right to go to the jury. *Kane* v. *New Idea Realty Co.*, 104 Conn. 508, 514, 133 Atl. 686. Virtually the same situation exists as to the plaintiff's claim that the maintenance of the building in such a way as naturally to produce a condition dangerous to passersby in the street constituted a nuisance. *Ruocco* v. *United Advertising Corporation*, 98 Conn. 241, 247, 119 Atl. 48; *Hanlon* v. *Waterbury*, 108 Conn. 197, 200, 142 Atl. 681; *Spagnolo* v. *Lanza*, 110 Conn. 178, 181, 147 Atl. 594; *Leahan* v. *Cochran*, 178 Mass. 566, 570, 60 N. E. 382; *Maloney* v. *Hayes*, 206 Mass. 1, 91 N. E. 911; *Brown* v. *White*, 202 Pa. St. 297, 51 Atl. 962. *Marston* v. *Phipps*, 209 Mass. 552, 95 N. E. 954, presented almost the same situation. There the plaintiff slipped upon a ridge of ice alleged to have been formed by water dripping from the roof of a bay window which

overhung the sidewalk and there was evidence from which the jury might have found that the roof projected so that snow would and did accumulate upon its top and there melt and drip upon the sidewalk and freeze; the trial judge directed a verdict for the defendant and the Supreme Judicial Court held this to be error, saying: "The case would come under the principle that one who so constructs or maintains a structure upon his own premises as to cause an artificial discharge or accumulation of water upon a public way, which by its freezing makes the use of the way dangerous, will be held liable to one who, being rightfully upon the way and in the exercise of due care, is injured in consequence of such dangerous condition." Upon the issue of the liability for the maintenance of the building in the way in which it was constructed the plaintiff was, as the evidence stood when the nonsuit was granted, also entitled to go to the jury.

Under the final aspect of the complaint, the plaintiff does not assert a claim of liability upon the part of the defendants based merely upon the fact that the sidewalk was defective due to the ice upon it, but her contention is that they maintained the building in such a way as to create a dangerous condition upon the sidewalk and were therefore obligated to use reasonable care to protect persons passing along it from injury caused thereby. If one by his acts creates a dangerous condition in a highway, or so conducts his own affairs that such a condition follows and he has notice of it, he is under a duty to use reasonable care to protect travelers from it; the liability for failure to do so does not arise out of the fact that the highway is defective but out of the duty resting upon him to guard persons subjected to danger by his act. *Waterbury* v. *Clark,* 91 Conn. 254, 257, 99 Atl. 578; *Wright* v. *Blakeslee,* 102 Conn. 162, 128 Atl. 113; *Hanlon* v.

*Waterbury,* 108 Conn. 197, 201, 142 Atl. 681; *Trasacco* v. *New York, N. H. & H. R. Co.,* 113 Conn. 355, 155 Atl. 493. In this case liability for failure to afford protection to passersby against the dangerous condition from the ice would not arise until knowledge of it was brought home to the persons responsible for it. The evidence affords little basis upon which the length of time the ice had been upon the sidewalk could be determined, but one witness did testify that there had been ice there all day and the description of it given by the plaintiff indicates that all of it had not recently formed. This evidence, though weak, was sufficient upon which to go to the jury upon the issue whether notice of it could be imputed to the Schaal corporation which occupied a part of the building. *Reardon* v. *Shimelman,* 102 Conn. 383, 389, 128 Atl. 705.

The lease to the Schaal corporation was of the entire premises, building and land, with a covenant for surrender of them at its expiration in as good condition as they were or should be put by the bank and one that the lessee should make all necessary inside repairs, and also a provision for a termination of the lease should the lessee make any alterations in the premises without the written consent of the lessor. There was no evidence that the premises were in any way out of repair. As between the Schaal corporation and the bank, the former under the terms of the lease had no power to make structural changes in the exterior of the building, amounting to "alterations." But, having otherwise full possession and control of the building, they might be responsible for not taking any steps short of such alterations to prevent water dripping upon the sidewalk by removing the accumulations of snow or other expedients. *Leonard* v. *Strong,* 115 Mass. 86; *Lee* v. *McLaughlin,* 86 Me. 410,

30 Atl. 65. On the other hand, if the building was negligently so constructed that the water naturally dripped upon the sidewalk and the bank leased it in that condition, forbidding the tenant to make any alteration therein without its consent, negligence in so constructing it would be that of the bank. It is true that in *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47, 49, 15 N. E. 84, summarizing some earlier Massachusetts cases, and in *Lee* v. *McLaughlin, supra,* following them, it was held that a lessor was not liable for injuries due to snow slipping from the roof of a building so as to injure travelers upon the highway, but the negligence of the lessee in not removing it or preventing its fall must be held the proximate cause of the injury; but if these cases are not distinguishable by reason of the fact that in them the roofs of the buildings in question were ordinary roofs, not projecting over the sidewalk, the Massachusetts cases at least must be held to have been overruled by *Marston* v. *Phipps, supra.* Negligence of the bank in making no provision for preventing the dripping from the melting snow in the construction of the building might reasonably be found to be a substantial factor in producing the dangerous situation upon the sidewalk. *Mahoney* v. *Beatman,* 110 Conn. 184, 194, 147 Atl. 762.

As regards the cause of action based upon nuisance, it is settled law that where an owner leases premises upon which there is a nuisance which will continue if they are used for the purpose and in the manner intended he is liable for damages resulting from that nuisance; *House* v. *Metcalf,* 27 Conn. 631, 640; *Maloney* v. *Hayes,* 206 Mass. 1, 3, 91 N. E. 911; *Isham* v. *Broderick,* 89 Minn. 397, 95 N. W. 224; *Brown* v. *White,* 202 Pa. St. 297, 311, 51 Atl. 962; *Timlin* v. *Standard Oil Co.,* 126 N. Y. 514, 525, 27 N. E. 786; 46 Corpus Juris, 746; and it is also settled that if the

premises are leased with a nuisance upon them, the tenant by his maintenance of the nuisance may be liable for injury resulting therefrom. *Green* v. *Carigianis,* 217 Mass. 1, 104 N. E. 571; 16 R. C. L. 1098. It is true that ordinarily to hold the tenant, notice of the nuisance must be brought home to him and in many instances there must also be a request for abatement. *Ahern* v. *Steele,* 115 N. Y. 203, 206, 22 N. E. 193. The Schaal corporation had been in actual occupation of the premises for a considerable time and, as we have pointed out, knowledge or its equivalent, notice of a condition which, as persons in charge of the building they ought reasonably to have known, might have been reasonably inferred; and the requirement of a request for abatement of the nuisance is obviously not applicable to the case of a public nuisance. *Leahan* v. *Cochran,* 178 Mass. 566, 569, 60 N. E. 382; *Isham* v. *Broderick,* 89 Minn. 397, 400, 95 N. W. 224. It is true that, as between the Schaal corporation and the bank the former had no power to make alterations in the building without the written consent of the latter and was under no duty to make external repairs, but these provisions in the lease could hardly be construed to prevent it from requesting the bank to make such changes in the building as would be necessary to abate a public nuisance, and if the bank refused, itself making them; or if the lease must be so interpreted, these provisions could not be sustained as not violative of public policy in a case where a stranger has suffered injuries from the nuisance. *Boston* v. *Worthington,* 76 Mass. (10 Gray) 496, 500. As regards the claim of negligence in failing to protect passersby from the dangerous condition created by the ice upon the sidewalk, responsibility here must rest upon the Schaal corporation, as the tenant in possession and control of the building.

There was evidence upon which the plaintiff was entitled to go to the jury upon the question of the liability of each of the defendants for her injury and the nonsuit should not have been granted.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.