MAMIE WEBEL *v.* YALE UNIVERSITY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

516

Argued May 3—decided June 8, 1939.

*John Clark FitzGerald,* with whom, on the brief, was *David E. FitzGerald* and *David E. FitzGerald, Jr.,* for the appellant (plaintiff).

*M. J. Blumenfeld,* for the appellee (named defendant).

MALTBIE, C. J. This case is an appeal from a judgment entered upon the sustaining of a demurrer to the complaint filed by the defendant Yale University. The complaint contained the following allegations: The plaintiff was in a beauty shop conducted by the defendants Segal, for the purpose of having her hair waved. She went into the ladies' room connected with the shop and on leaving it fell at the entrance. The floor of the ladies' room was some seven inches higher than the floor of the shop, the door extending down to the level of the shop floor. The building is owned by Yale University, to which we shall hereafter refer as the defendant, and the Segals were occupying it at the time of, and had occupied it for a long time before, the time of the accident as lessees of the defendant. The structural condition at the entrance to the ladies' room existed when the shop was leased to the Segals and "it was intended by the defendant Yale University that said condition be continued . . . in the manner and for the purpose set out and used by said defendants, which use for such purposes and in such a manner was a nuisance."

In *Bergman* v. *Jacob,* 125 Conn. 486, 7 Atl. (2d) 219, which was an action in which a customer in a res-

taurant sought to recover damages against the lessor of the premises for injuries suffered from a fall down a stairway, we quoted from previous decisions of this court to the effect that where an owner leases premises upon which there is a nuisance which will continue if they are used for the purpose and in the manner intended, he is liable for damages resulting from that nuisance. None of the cases referred to in that opinion involved the question whether one who enters upon leased premises, at the express or implied invitation of the lessee, to do business with him there, can recover against the owner of the property for defective conditions existing thereon.

"A lease is, in effect, a conveyance of an interest in the leased premises. There is no warranty on the part of the landlord that they are safe or fit for habitation. The lessee takes exclusive possession of the premises and accepts them as they are. He assumes the risks of any structural defects except such as he could not discern with reasonable diligence, and with a knowledge of which the landlord is chargeable." *White* v. *DeVito Realty Co.,* 120 Conn. 331, 334, 180 Atl. 461; *Aprile* v. *Colonial Trust Co.,* 118 Conn. 573, 577, 173 Atl. 237. The reason of the rule "is that as to obvious risks the tenant by accepting the premises as they appear, brings himself equitably within the rule *volenti non fit injuria.*" *Hearn* v. *Hilliard Co.,* 99 Conn. 666, 671, 122 Atl. 567; *Gibson* v. *Hoppman,* 108 Conn. 401, 410, 143 Atl. 635; *Brandt* v. *Rakauskas,* 112 Conn. 69, 73, 151 Atl. 315. In *Hearn* v. *Hilliard Co.,* supra, we held that this rule of the assumption of risk applied as regards a minor child of the tenant. *Newman* v. *Golden,* 108 Conn. 676, 678, 144 Atl. 467.

It has been generally held that persons who go upon leased premises upon the invitation or license of the tenant enter them under a right derived from him

and have no greater rights to recover for an injury than he would have, and that, consequently, if the tenant could not recover for a defective condition thereon, neither could a person visiting them upon his express or implied invitation. 16 R. C. L. 1067; note, 110 A. L. R. 756. Tiffany gives two reasons for this rule: One is that otherwise the tenant, by inviting persons to enter upon the premises, could impose liabilities upon the landlord to an indefinite extent, and the second, that such persons have no right to expect the landlord, with whom they are not in privity, to exercise any care to protect them from injury. 1 Tiffany, Landlord & Tenant, p. 650. If, however, the premises are used for the purpose and in the manner intended, the extent of the liability of the landlord would be restricted to situations he had or reasonably ought to have had in mind when he made the lease. Nor is liability in negligence, at least, necessarily dependent on a pre-existing privity in legal relationship between the person injured and the person causing the injury. *Swentusky* v. *Prudential Ins. Co.,* 116 Conn. 526, 533, 165 Atl. 686; *Dean* v. *Hershowitz,* 119 Conn. 398, 408, 177 Atl. 262.

In *Reardon* v. *Shimelman,* 102 Conn. 383, 128 Atl. 705, we directly repudiated the doctrine that one who comes upon premises at the invitation of a tenant can have no greater right to recover for an injury suffered thereon than would the tenant, saying (p. 386) that the obligation of a landlord to keep reasonably safe the common approaches of a tenement house extends "also to all those who have lawful occasion to visit the tenants for social or business purposes. A right of ingress or egress for all such persons is essential not merely to the enjoyment of the rented premises by the tenants but also to the renting of them by the landlord; it is part of that for the use of which he is

paid, and it exists for the mutual benefit of landlord and tenants alike. . . . The basis of the liability of the landlord to those visiting the premises for social purposes does not rest primarily upon an express or implied invitation from one of the tenants, though no doubt that might be found here, but upon the broader principle, that 'where the privilege of user exists for the common interest or mutual advantage of both parties, it will be held to be a case of invitation; but if it exists for the mere pleasure and benefit of the party exercising the privilege, it will be held to be a case of license.' " It is true that in that case we were dealing with a defective condition of a common approach to a tenement house, but under the principle there stated one who comes upon leased premises at the invitation of the tenant may have, as regards defects therein, other rights than a tenant would have. *Colorado Mortgage & Investment Co., Ltd.* v. *Giacomini,* 55 Colo. 540, 559, 136 Pac. 1039. Indeed, from the standpoint of practical justice, there are strong reasons for applying the doctrine in such a case. The freedom from liability of the landlord to the tenant for defects in the premises is based upon the notice of the conditions of the premises which the tenant has or with which he is chargeable; but it certainly is not just to charge one who visits the premises at the invitation of the tenant with the knowledge which the tenant has or with which he is chargeable when the invitee may have neither actual notice nor, upon the facts known or reasonably observable by him, be chargeable with notice. *Gibson* v. *Hoppman,* 108 Conn. 401, 410, 143 Atl. 635.

Even where the rule that one who visits the premises at the invitation of a tenant has no greater rights to recover against the landlord than would the tenant applies, an exception has not infrequently been made

and the landlord has been held liable to persons who visit them at the express or implied invitation of the tenant for injuries due to defects in the leased premises existing at the time the lease was made. In a number of the cases the premises in question were let for a use which involved a general invitation to the public to visit them; thus in *Edwards* v. *New York & H. R. Co.*, 98 N. Y. 245, the premises were leased for an exhibition open to the general public; in *Camp* v. *Wood*, 76 N. Y. 92, the premises were let for a dance open to the public; in *Barrett* v. *Lake Ontario Beach Imp. Co.*, 174 N. Y. 310, 66 N. E. 968; in *Joyce* v. *Martin*, 15 R. I. 558, 10 Atl. 620; in *Albert* v. *State*, 66 Md. 325, 7 Atl. 697, the premises were used as a beach resort, and in *Folkman* v. *Lauer*, 244 Pa. St. 605, 91 Atl. 218, the injury occurred as the result of the collapse of a grandstand at a baseball park. On the other hand, in *Swords* v. *Edgar*, 59 N. Y. 28, a longshoreman recovered for injuries on a leased pier, and while that case was criticized and limited in the majority opinion in *Edwards* v. *New York & H. R. Co.*, supra, it was cited as authority in *Barrett* v. *Lake Ontario Beach Imp. Co.*, supra, and has been quite generally referred to in other states as sustaining a recovery in like actions. In *Warner* v. *Lucey*, 201 N. Y. S. 658, a plaintiff was permitted to recover where he went to a public garage to assist in getting a car stored there by one of its patrons, and this case was affirmed, 238 N. Y. 638, 144 N. E. 924. In *Copley* v. *Balle*, 9 Kan. App. 465, 60 Pac. 656, the plaintiff was a visitor to a hotel which had been leased from the defendant, and in *Colorado Mortgage & Investment Co., Ltd.* v. *Giacomini*, 55 Colo. 540, 136 Pac. 1039, the plaintiff was a guest in a leased hotel. In *Turner* v. *Kent*, 134 Kan. 574, 7 Pac. (2d) 513, and *Senner* v. *Danewolf*, 139 Ore. 93, 102, 293 Pac. 599, 6 Pac. (2d)

240, the plaintiff was a patron of a store, and in *Gilligan* v. *Blakesley*, 93 Colo. 371, 26 Pac. (2d) 808, the plaintiff was a patient who was visiting a doctor's office leased from the defendant. In *Godley* v. *Hagerty*, 20 Pa. St. 387, the plaintiff was a laborer engaged in storing goods in a leased warehouse and was injured by the collapse of the building. In *Reichenbacher* v. *Pahmeyer*, 8 Ill. App. 217, the plaintiff was the employee of the lessee of a building used as a hotel; in *Nugent* v. *Boston, C. & M. R. Co.*, 80 Me. 62, 77, 12 Atl. 797, the plaintiff was an employee of a lessee railroad company; in *Deutsch* v. *Max*, 318 Pa. St. 450, 178 Atl. 481, recovery by an employee of the tenant, injured by the collapse of a wooden balustrade on a second-story porch, was also sustained, but in *Harris* v. *Lewistown Trust Co.*, 326 Pa. St. 145, 191 Atl. 34, in a similar situation to that in the *Deutsch* case the court reached an opposite conclusion and overruled that case; and we have no need, in the situation before us, to consider whether liability of a landlord would extend to an employee of the tenant. We confine our attention to a situation where one enters upon leased premises as a business patron of the lessee.

In an article in 84 Pennsylvania Law Review, p. 467, Lawrence H. Eldredge, one of the advisers in the preparation of the Restatement of the Law of Torts, reviews many of the authorities dealing with the liability of the landlord to persons on leased premises, and points out (p. 488) that there has been a development of the doctrine of liability in such cases as regards defects existing at the time the lease was made, although, to be sure, that tendency has been by no means uniform. However, in the Restatement of the Law of Torts, Vol. 2, § 359, it is stated: "A lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his lessee,

is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor (a) knew or should have known of the condition and realized or should have realized the unreasonable risk to them involved therein, and (b) had reason to expect that the lessee would admit his patrons before the land was put in a reasonably safe condition for their reception." If the liability of a landlord for defects existing when the lease was made to those who enter upon leased premises as patrons of the lessee is to be sanctioned, as we think it should, we are not able to see any distinction in law depending merely upon the number of persons who enter upon the premises. The legal relationship between the proprietor of a beach open upon payment of a fee for general use and those who resort to it, is no different than that which exists between the proprietor of a store and people generally invited to it in hope that they will buy goods there for sale; and an attempt to distinguish situations based solely upon the number of persons who visit premises as patrons of the tenant would make liability depend upon a test unsatisfactory and impractical to apply. The basis of liability in such a case, as is repeatedly stated in the decisions we have cited, is that the landowner leases premises on which he knows or should know that there are conditions likely to cause injury to persons entering on them, that the purpose for which the premises are leased involves the fact that people will be invited upon the premises as patrons of the tenant, and that the landowner knows or should know that the tenant cannot reasonably be expected to remedy or guard against injury from the defect. Under such circumstances the landowner should under proper circumstances be held responsible for the injury which occurs.

An important limitation upon the landlord's lia-

bility is that such liability does not arise unless he has reason to expect that the tenant will not take steps to remedy or guard against injury from the defect. Thus a substantial structural change in a leased building might be necessary to make it reasonably safe for use and under the terms of the lease the tenant might be without power to make that change. On the other hand, the nature of the defect might be such that the landlord would reasonably expect that the tenant would take steps to remedy the defect or otherwise to safeguard persons entering them at his invitation. Thus in *Smith* v. *Walsh,* 92 Md. 518, 533, 48 Atl. 92, where a child was killed by a fall from a balcony due to the railing being out of repair, the court, while not basing its decision on this ground, said: "A few nails and a board or two would have remedied this trouble, and, certainly in the absence of notice to her, the [landlord] might well have assumed that neither the [lessee] nor those occupying the rooms would permit the balustrade, or any part of it, to give way or remain away, to the danger of anyone when it could so easily have been fixed, so as to have avoided such an accident as occurred." The question whether the landlord had reason to expect the tenant would not remedy the defect or otherwise safeguard patrons entering the premises would ordinarily present a question of fact.

The quotation we have made from the Restatement does not purport to determine in what field of law the right of the plaintiff to recover lies, and an examination of the cases we have cited shows that in some of them the liability is treated as one in nuisance, while in others it is treated as in negligence. One who enters premises at the express or implied invitation of a tenant does not come upon them in the exercise of any public right, but is there by reason of a right extended to him by the tenant; and, if injured, the visitor to

the premises cannot base his right to recover upon the existence of a public nuisance. A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land. "In the modern authorities it [private nuisance] includes all injuries to an owner or occupier in the enjoyment of the property of which he is in possession, without regard to the quality of the tenure." Pollock, Torts (13th Ed.) 422; Salmond, Torts (8th Ed.) 235; Harper, Torts, § 179. The distinction between liability in negligence and nuisance has frequently not been clearly maintained in the cases. We have recently decided two cases where the claim might have been made that the plaintiff under this principle was not entitled to recover in nuisance because the defect complained of did not amount to a private nuisance as regards him: *Stoto* v. *Waterbury,* 119 Conn. 14, 174 Atl. 189; *Wolfe* v. *Rehbein,* 123 Conn. 110, 116, 193 Atl. 608; but in neither was this claim made. It certainly will tend to clarity in the application of legal principles if the doctrine of private nuisance is restricted to its proper field.

The liability in this case, if one exists, belongs in the field of negligence. See 1 Tiffany, Landord & Tenant, 683. This accords with our statement in *Calway* v. *Schaal & Son, Inc.,* 113 Conn. 586, 592, 155 Atl. 813, where we were considering the liability of a bank, the owner of a building leased by it to another, to one who was injured while walking along the sidewalk by reason of its defective construction resulting in water dripping from the eaves to the sidewalk and there freezing: "Negligence of the bank in making no provision for preventing the dripping from the melting snow in the construction of the building might reasonably be found to be a substantial factor in producing the dangerous situation upon the sidewalk."

The complaint squarely placed the claimed right of the plaintiff to recover against the defendant upon the ground of nuisance. Had the demurrer been upon the ground that the only possible liability of the defendant was in negligence and not in nuisance it might have been sound. It took, however, the broader ground that the plaintiff could not recover because the exclusive control of the premises was in the tenants, the Segals, and the plaintiff was in the shop at their invitation; and this was the basis upon which the trial court decided the case. These facts were not sufficient to defeat the plaintiff's right of recovery and the demurrer should have been overruled.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.