ELLA HAHN *v.* MUSANTE, BERMAN AND STEINBERG AND COMPANY, INC.

Argued October 6—decided December 15, 1943.

*David Goldstein,* with whom were *Leo Nevas* and, on the brief, *John F. Holian,* for the appellant (plaintiff).

*John Keogh, Jr.,* with whom were *Frank J. Culhane* and, on the brief, *John Keogh,* for the appellee (defendant).

Maltbie, C. J. The plaintiff brought this action to recover for injuries suffered when she fell just inside the entrance to a building leased by the defendant to the state of Connecticut for use as a public office in administering unemployment compensation. The trial

court directed a verdict for the defendant, and from the court's denial of a motion to set that verdict aside the plaintiff has appealed. The question then is, was there evidence before the jury upon which they could reasonably find facts furnishing a basis for holding the defendant liable?

The jury could have found these facts: On June 9, 1939, the state entered into a written lease of the building for a period of two years from July 1, 1939, at a monthly rental of $100. The lease contained an agreement that the defendant, before that day, would make certain repairs and alterations in accordance with plans and specifications submitted by the state, and this was done. It also contained a covenant that the state would not "assign this lease, nor underlet a part or the whole of said leased premises, nor make alterations in said leased premises, nor use the same for any purpose but that hereinbefore authorized, without written permission from" the defendant, with a further provision that if the state violated this covenant the lease would thereupon terminate. It also contained a provision giving the state an option to extend the lease for a further period of two years or any part thereof on the same terms and conditions, provided notice was given thirty days before the termination of the tenancy; but there was no evidence that such a notice was given. On August 22, 1941, a further written lease of the premises for a period of two years from July 1, 1941, was executed. This lease contained the same provisions as the first one except that it omitted the agreement by the defendant to make repairs and alterations.

During the occupancy of the building by the state, a large number of persons were continually visiting the office in connection with unemployment compensation. The building had two entrances. At first the door

within which the plaintiff fell was used as an exit, but from a time a few months before the accident it was used principally for entrance to the building. The threshold of this door was higher than the level of the floor of the office. Some time before the accident the defendant had sent a carpenter to the premises who constructed just inside the door a platform about four feet square, with its top five or six inches above the floor of the office and with railings along the sides at right angles to the door but with the side opposite the door left open for use in stepping from the platform to the floor. Thereafter several people stumbled in stepping down, although a sign giving warning of the step had been posted. A representative of the defendant was informed of this; the assistant manager of the office suggested to him that the entrance be changed so as to eliminate the need of stepping down after entering the building; and another member of the office staff suggested the substitution of a ramp for the platform. The defendant sent a carpenter to the premises who changed the railings of the platform so that there was one across the side opposite the door but none on the right of the entrance, and persons entering the building would cross the platform and step down on that side. People continued, however, to stumble in stepping down to the floor. The attention of the defendant's representative was called to this fact two or three weeks before the accident occurred, and he said he would remedy conditions. Some time after July 1, 1941, the defendant caused a ramp to be built in place of the platform. On that day the plaintiff had occasion to visit the office in connection with a claim for unemployment compensation. She entered the door, turned to the right, took two or three steps and, stepping off the edge of the platform, fell

to the floor. The defendant concedes in its brief that the entrance to the room was adequately lighted.

In *Webel* v. *Yale University,* 125 Conn. 515, 7 Atl. (2d) 215, 123 A. L. R. 863, note, 870, the plaintiff fell on premises leased by the defendant for a beauty shop by reason of the fact that the floor of a room which she was leaving was some seven inches higher than that of the room which she was entering, and we adopted and applied the doctrine that, where a landowner leases premises for a purpose which involves the fact that people will come into them as the invitees of the tenant, and there are conditions upon the premises which are likely to cause injury to such persons and the landowner knows or should know that the tenant cannot reasonably be expected to remedy these conditions or guard against danger from them, the landlord may be liable for injuries suffered by reason of them. The trial court, in directing the verdict, held that the doctrine there advanced did not apply in this case, and that the jury could not reasonably find that the platform as it existed on July 1, 1941, was negligently constructed or inherently dangerous or that the defendant knew or should have known that the tenant would so use the platform as to make it dangerous or fail to guard visitors from any danger that might arise from it.

Ordinarily a landowner, at least where he has made no agreement to repair, is not liable for injuries due to defective conditions arising upon the leased premises during the tenancy; he has surrendered possession and control of them to the tenant and has no right to enter to abate the conditions; and it is the tenant who is liable for injury arising from them. *Chambers* v. *Lowe,* 117 Conn. 624, 628, 169 Atl. 912; *Perkel* v. *Grayson,* 119 Conn. 465, 468, 177 Atl. 534; *Fogarty* v. *M. J. Beuchler & Son, Inc.,* 124 Conn. 325, 331, 199

Atl. 550. The doctrine of the *Webel* case is a corollary to this principle. While in the *Webel* case we stated the doctrine as applicable only to conditions existing upon the premises at the time a lease is made, every consideration of sound policy points inescapably to the conclusion that if, during the lease, the lessor, at the request or with the consent of the lessee, express or implied, creates a condition of danger upon the leased premises a like doctrine should apply, and if the necessary conditions are present the landlord should be held liable for resulting harm.

In *Chipman* v. *National Savings Bank,* 128 Conn. 493, 23 Atl. (2d) 922, a tenant sued to recover for injuries suffered by reason of the negligence of the landlord in making repairs within the leased premises; we found error in the charge of the court because it did not sufficiently instruct the jury that the duty of the defendant was not to make the premises reasonably safe but to use reasonable care to do so; but we said (p. 495): "In such a situation as this the agreement of the defendant to make repairs or its voluntary act in undertaking to do so is the basis out of which a duty to exercise care to guard against injury to the plaintiff would arise. . . ." In *Feeley* v. *Doyle,* 222 Mass. 155, 109 N. E. 902, a visitor to a store leased for an ice cream parlor recovered a verdict against the landlord on the ground that in making a change in the premises he did it so negligently that bricks and an iron plate fell from the ceiling on the plaintiff. In *Nilsson* v. *Abruzzo,* 107 N. J. L. 327, 153 Atl. 486, a patron in a barber shop who was injured by the fall of a heavy radiator, which the defendant landlord had placed on brackets on the wall in the course of making alterations in the shop, secured a verdict. The court, in sustaining it, said (p. 330): "It may be conceded that appellants were under no duty to either alter or

repair the premises, but the fact is that they did undertake to make changes in the walls, and having assumed to make such changes they were bound to perform the work in a reasonably careful manner. For failure to do so liability is imposed upon them, not by reason of a duty arising from the contract, but upon the doctrine that one who undertakes to perform such work, even if done gratuitously, and does it negligently, whereby damage results, is liable for such negligence." *Wood* v. *Prudential Ins. Co. of America*, 212 Minn. 551, 4 N. W. (2d) 617, presents a very similar situation to the one before us; there was an eight-inch drop from an areaway to the floor of premises which had been leased for a beauty shop; on complaint of the tenant, the defendant landlord built a platform inside the door; the plaintiff entered the shop to make an appointment for personal services and, taking a step forward on the platform, put her foot down with the heel on it but the ball of the foot over the edge, and fell to the floor; and the court sustained a verdict against the landlord, quoting from the *Webel* case. In this type of case the liability of the landlord arises out of the fact that he has been the one who made the changes; but, as he has surrendered general control of the premises to the tenant, it is a condition of the imposition of that liability that the landlord knows or should know that the tenant cannot reasonably be expected to remedy the defect or guard visitors to the premises against danger from it.

It is true that the plaintiff was injured on the day after the first lease expired and before the second lease was executed. That the state was on that day still a tenant of the premises is admitted in the answer, and the jury could reasonably have found that it was continuing to occupy them and carry on its business there. Whatever the nature of its tenancy on the day of the

accident, it was occupying the premises on which the defendant had created a condition which might reasonably be found to be dangerous, and the nature of its tenancy is immaterial as regards the principle we are discussing. There was some hearsay testimony to the effect that the change in the platform previous to the plaintiff's fall was made as a result of consultation between the office manager and the carpenter sent by the defendant, but even if the jury had found this to be so that would not necessarily make the work that of the state and not of the defendant. There was evidence that the defendant paid for it, and the jury could reasonably have found that, in making the change, the carpenter was solely the employee of the defendant. See *Tierney* v. *Correia,* 120 Conn. 140, 144, 180 Atl. 282.

There was evidence from which the jury could reasonably have found that the defendant knew that the purpose for which the premises were leased involved a visit to them by many persons who had business with the unemployment compensation office of the state; that the defendant, by its employee, at the express or implied request of the state, built the platform and later changed the railing on it; that it was not reasonably safe for the use of visitors to the premsies; and that the defendant knew or should have known that the state could not reasonably be expected to make any changes in the platform or take any other steps which would be effective to guard visitors to the premises against danger from it. Indeed, the fact that the state could make no alterations in the premises without the consent of the defendant would in itself go far to establish that the latter could not reasonably expect the former to attempt to remedy the dangerous condition by changing the platform. *Calway* v. *Schaal & Son, Inc.,* 113 Conn. 586, 592, 155 Atl. 813; Restate-

ment, 2 Torts, p. 973. In view of the evidence that the defendant's representative knew that several people had stumbled on the platform before the railing was changed and that one of the men in the office had suggested to him the construction of a ramp, and of the other evidence in the case, it could not be held that the jury could not reasonably find the defendant to have been negligent in constructing the platform and railings in the way it did.

There is error, the judgment is set aside and the case is remanded with direction to set the verdict aside.

In this opinion the other judges concurred.