**Carlein HATFIELD, a minor over the age of fourteen (14) by her guardian ad litem, Norma B. Hatfield, Appellant,**

v.

**Sophia Beleos PALLES, Appellee.**

**No. 76–1050.**

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1976

Decided July 16, 1976.

Daniel A. Speights, Columbia, S. C., for appellant.

R. Bruce Shaw, John U. Bell, II, Stephen G. Morrison, Columbia, S. C., (Nelson, Mullins, Grier & Scarborough, Columbia, S. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, WIDENER, Circuit Judge and MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.*

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.

Summary judgment was based on the view that, as a matter of law, defendant owed no duty to plaintiff. We affirm.

*Background*

In this diversity action, plaintiff, then age 11, sought damages for severe and permanent injuries sustained on December 17, 1970, from a fire and explosion in a South Carolina building owned by defendant and leased to plaintiff's father.

It appears that the fire and explosion occurred when the plaintiff's father touched a light fixture which was hanging from the ceiling near the front of the store by unprotected electrical wires, causing a spark which ignited fireworks stored in the building.

Present in the store at the time of the incident were the plaintiff; her father; her two brothers, Carl M. Hatfield, Jr., and Johnny Daryl Hatfield; an employee of her father, Willie Portee; a friend of her father, Elaine Driggers; and an unnamed child, who was purchasing fireworks. Carl Hatfield, Jr., Willie Portee and the unnamed child were in the front of the store and escaped without serious injury. Plaintiff, however, was in the rear of the store, with Johnny Hatfield and Elaine Driggers, both of whom died as a result of injuries from the fire. Plaintiff's father was killed in an attempt to rescue plaintiff and her brother Johnny.

Plaintiff's father originally leased the building in 1960 or 1961 from the defendant's father, Theodore Beleos. The lease was oral, the term was from month to month, and the rent was approximately $35 per month. There was no express covenant to repair. Plaintiff's father began to use the building as a fireworks stand immediately after the original lease in 1960 or 1961. Defendant's father frequently visited the store where fireworks were being sold. Defendant's brother, Jimmy Beleos, often collected the rent. The defendant denied knowledge of the use as a fireworks stand, but did acknowledge that she visited the outside of the building on one occasion and that her husband went inside on another. From the evidence of posters on the outside

*Sitting by designation.

of the building and a large neon sign advertising fireworks, the district court inferred that defendant knew the building was being used as a fireworks stand.

Sometime in 1966, defendant's father deeded the building to her. Thereafter, he collected the rent and deposited it in a local bank for defendant's children. Following the death of the defendant's father in 1968, her brother collected the rent, sending it to her in Arkansas and later in Alabama, where she resided at the time of the judgment. Prior to the explosion, defendant's brother, at her request, instructed plaintiff's father to pay the rent directly to her by mail.

The building was a small white masonry structure in a state of disrepair. The lights frequently blinked on and off and the electrical wiring was in a deteriorated state. Plaintiff's father and mother had complained to defendant's father and brother about the building in general, and the electrical wiring in particular, from the outset of the lease, including letters to defendant requesting that she repair the building for the 1969 and 1970 seasons.

In April 1970, plaintiff's parents were divorced, *a vinculo matrimonii*. Her mother was granted custody of plaintiff and her brothers. From that date until the day of the fire, neither plaintiff's mother nor the children had been inside the building. At approximately 5:00 p. m. on December 17, 1970 plaintiff's mother went to the fireworks stand to pick up a pair of shoes her former husband had purchased for one of plaintiff's brothers. The children persuaded Mrs. Hatfield to allow them to remain at the stand until their father could bring them home. Mrs. Hatfield agreed. A short time after she left, the fire and explosion occurred.

A complaint was filed against defendant on April 19, 1974. Following joinder of issue, exchange of interrogatories and deposing of two witnesses by each party, discovery was stayed by consent order dated December 2, 1974, pending decision on de-

fendant's Motion for Summary Judgment. By order dated November 6, 1975, the district court granted the Motion on the ground that, as a matter of law, defendant owed no duty to plaintiff.

## OPINION

The sole issue is what, if any, legal duty the defendant landlord owed plaintiff under the facts presented and the applicable South Carolina law, which the parties agree governs this action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

There being no decision of the South Carolina courts in a case on all fours with that before us, we must make a vicarious determination of the law as we believe it would be applied by those courts.

Plaintiff, as indicated below, was present in the building as a licensee of her tenant father and her rights vis-a-vis defendant are therefore governed by rules applicable to the landlord-tenant relationship.

As the district court found, the traditional common law of South Carolina governs the relationship between landlord and tenant. As early as 1907, the Supreme Court of South Carolina in *Williams v. Salmond,* 79 S.C. 459, 61 S.E. 79 (1907) determined, in effect, that the common law of South Carolina embraces the doctrine of *caveat emptor,* saying "The lessor turns over the property, and the lessee takes it as it is turned over to him." 79 S.C. at 460, 61 S.E. at 79.

Though an express contract to inspect and repair was present in *Sheppard v. Nienow,* 254 S.C. 44, 173 S.E.2d 343 (1970), the South Carolina Supreme Court stated that the common law of South Carolina imposes no duty on the landlord to inspect or repair the leased premises absent such express contract.

Thus the defendant landlord owed no duty to plaintiff, under the common law of South Carolina, to maintain the premises in a safe condition.[1] As the district court correctly found:

---

1. Though the rationale supporting the common law may be immaterial to our determination of

its substance, it would appear that it rests upon the inability of the landlord to control the ac-

Absent an express warranty or fraudulent concealment, a landlord is not liable for any defect in the leased premises. In the present case there is no evidence that an express warranty was made by the defendant, or her father, as to the condition of the premises. It is also clear that the plaintiff's father and mother were both aware of the alleged defects in the premises from the inception of the lease in 1960 or 1961. Thus, it follows that defendant could not be charged with fraudulent concealment. Absent these exceptions, there is no general obligation on the part of a landlord in South Carolina to insure that the premises are, at the time of the demise, in a condition of fitness for the use which the tenant proposes.

Plaintiff contends here, as she did below, that defendant was under a duty to keep the premises in a safe condition by virtue of those provisions of the South Carolina Code of Laws which created the office of State Fire Marshal and which deal with the prevention and investigation of fires, and by virtue of the regulations promulgated thereunder.[2]

Specifically plaintiff relies upon the provisions of § 37–82.11 which declares illegal the use and occupancy of all buildings (with certain inapplicable exceptions) "which are unsafe or not provided with adequate egress, or which constitute a fire hazard or are otherwise dangerous to human life, or which in relation to existing use constitute a hazard to safety or health by reason of inadequate maintenance, dilapidation, obsolescence, or abandonment." That section also requires the owner to either repair or demolish such a building. In view of the remedial purpose of that legislation i. e., the protection of life and property, plaintiff contends that it should be construed liberally as imposing an affirmative duty on defendant.

Plaintiff also argues that an affirmative duty is imposed upon the defendant by a regulation 1–67 promulgated by the State Fire Marshal pursuant to § 37–82.1 which directs him to require conformance by the owner with minimum fire protection standards based on nationally recognized criteria for the prevention of fire and the protection of life and property. That regulation incorporates the Southern Standard Building Code and the National Electrical Code and places responsibility for compliance upon the owner. Although the regulation does not specifically apply to existing buildings, such as that before us, it does provide that the "owner or other designated agent" shall be responsible for the maintenance of existing buildings in a safe condition. On January 30, 1969, regulation 1–67 was made applicable by newly promulgated regulation 2–67, to buildings, structures and premises where hazardous substances including fireworks are stored, handled or used.

■ There have been no decisions by the South Carolina Supreme Court on the issue of a landlord's liability for violation of the safety statutes or regulations relied upon by plaintiff. A federal court must therefore, as above indicated, endeavor to decide the issue in the way it believes the South Carolina Supreme Court would decide it. *Erie R. R. Co. v. Tompkins,* supra; *Smith v. Regina Mfg. Co.,* 396 F.2d 826 (4th Cir. 1968).

■ The adoption of plaintiff's interpretation of the Fire Marshal statutes would result in derogation of well-settled rules of common law. In South Carolina it is quite clear as found by the district court, that the rules of the common law are not to

---

tions of the tenant and that those entering under the tenant have no right to expect the landlord to be responsible to them. *Webel v. Yale University,* 125 Conn. 515, 7 A.2d 215 (1939). Plaintiff's severe injuries, and her tender age, invoke the strong sympathy of all

who learn of the tragedy herein. Such considerations cannot, however, change the law.

**2.** See § 37–80 *et seq.* of the South Carolina Code of Laws, 1962, as amended, and §§ 1–67 and 2–67 of the Rules and Regulations of the State Fire Marshal (1967).

be changed by implication and are not to be overturned except by clear and unambiguous statutory language evidencing an intent so to do. *Nuckolls v. Great Atlantic & Pacific Tea Co.,* 192 S.C. 156, 5 S.E.2d 862 (1940); *Coakley v. Tidewater Const. Corp.,* 194 S.C. 284, 9 S.E.2d 724 (1940). We find no language in the statutes and regulations cited by plaintiff which clearly indicates an intention by the legislature to abrogate the well settled common law rules governing the landlord-tenant relationship. The statutes set forth the rights and duties of the State Fire Marshal, and the responsibilities of owners, occupants or persons in control of buildings once they have been found unsafe by the State Fire Marshal. The language relied upon applies specifically and of equal force to the owner, occupier or person in control of the premises, thus encompassing the tenant as the occupier or person in control of the premises. We find nothing in the cited statutes or regulations which would constitute an unequivocal abrogation of the common law governing the landlord-tenant relationship, and nothing therein which would evidence a legislative intent to abrogate or modify that common law.[3]

We find no merit in plaintiff's argument that this case is removed from the general common law rule because the premises were being used as a public place. Whether the Supreme Court of South Carolina has in fact adopted a public use exception is debatable. In *Timmons v. Williams Wood Products,* 164 S.C. 361, 162 S.E. 329 (1932) the court pointed in *dicta* to the *possibility* of such an exception but the case did not involve an injury occurring in a public place. Moreover, if a public use exception were applicable in South Carolina plaintiff still could not prevail herein. As the district court found, plaintiff was not on the premises for the purpose for which they were open to the public. Plaintiff, present only to visit her father, was a social guest, and thus merely a licensee. As noted in the opinion of the district court, comment (e) of § 359 of the Restatement of Torts provides:

> The liability is based upon the fact that the lessor knows that the land is to be thrown open to the public for entry, while it is in the same condition as when he gives possession to his lessee. Therefore he is subject to liability *only to those persons whom the lessee admits to the land for that purpose.* He is not subject to liability to invitees of the lessee who come upon the premises for a business purpose other than that for which they are open to the public, as in the case of a truck driver delivering provisions to a restaurant. *The lessor is not liable to licensees of the lessee who come for another purpose, as in the case of the friend of the restaurant keeper who comes* to pay a social call. (emphasis added)

Accordingly, we hold that defendant has satisfied her burden of demonstrating that there is no genuine issue as to any material fact, that she owed no duty to plaintiff as a matter of law, and that she is entitled therefore, to judgment.

The decision of the district court is affirmed.

Affirmed.

---

**3.** Plaintiff's argument re defendant's violation of fire preventing statutes and regulations must fall in the face of a finding that the defendant landlord owed no duty to the tenant and thus no duty to plaintiff.