[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff, Mary Murphy, brought this personal injury action against Danbury Mall Associates Limited Partnership (DMALP), Danbury Car-G-Cam Uni Corp. d/b/a C C Unisex Hair Design (Car-G-Cam) and, as individuals, the officers and directors of Car-G-Cam, Camillo Iovieno, Nunzio Paul Caruso, Donato D'Angelo, Guiseppe Iovieno and Salvatore Acompora (Car-G-Cam officers). Murphy alleges that she slipped and fell in a hair salon, which is owned and operated by Car-G-Cam and located in the Danbury Fair Mall.
Car-G-Cam leases the store space in the Danbury Fair Mall in Danbury, Connecticut from DMALP, the owner of the mall. On August 7, 1997, the plaintiff alleges that she slipped and fell on a gelatinous substance inside the Car-G-Cam hair salon. In count one, the plaintiff alleges that Car-G-Cam was negligent in its failure to remedy the condition of the floor. In count two, the plaintiff alleges that as owner of the premises, DMALP is also liable for the plaintiff's injuries. In counts three through seven, the plaintiff alleges that the Car-G-Cam officers are also personally liable, because Car-G-Cam is not a corporation in good standing under the laws of Connecticut.
DMALP now moves for summary judgment on the second count on the ground that there is no genuine issue of material fact as to whether it was responsible for the plaintiff's fall and therefore is entitled to judgment as a matter of law. The Car-G-Cam officers also move for summary judgment on counts three through seven on the ground that there are no genuine issues of material fact as to whether they were personally liable as corporate officers for the alleged corporate negligence of Car-G-Cam, because there is no basis for piercing the corporate veil and, therefore, the Car-G-Cam officers are entitled to judgment as a matter of law.[1]
"Practice Book . . . § 17-49 provides that summary judgment shall CT Page 4219 be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Brackets omitted; citations omitted.) Miles v. Foley, 253 Conn. 381,385-86, 752 A.2d 503 (2000). A party opposing a motion for summary judgment is "entitled, indeed obligated, to file an affidavit reciting evidentiary matter to establish the existence of a genuine issue as to a material fact." Conference Center Ltd. v. TRC, 189 Conn. 212, 217,455 A.2d 857 (1983). If the adverse party does not submit facts showing that there is an issue of fact, the court is entitled to rely upon the facts stated in the affidavits submitted by the moving party. Kakadelisv. DeFabritis, 191 Conn. 276, 280-81, 464 A.2d 57 (1983); Bartha v.Waterbury House Wrecking Co., 190 Conn. 8, 11-12, 459 A.2d 115 (1983).
 I COUNT TWO AGAINST DMALP
In support of its motion, DMALP attaches a copy of a lease agreement between DMALP and Car-G-Cam which was in effect at the time of the plaintiff's fall. DMALP argues that pursuant to the lease, it is not responsible for maintenance of the premises leased to Car-G-Cam. For the following reasons, the court agrees with the defendant's contention.
A landlord out of possession and control is normally not liable to persons injured on the leased premises. D. Wright, J. Fitzgerald W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 54. A lessor retains no rights over leased premises except those expressly designated in the lease, and whether a lessor retains control is determined by examining the terms of the lease. (Citations omitted.) Charest v. BurgerKing Corp., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 395749 (March 3, 1993, Aurigemma, J.) (8 C.S.C.R. 369, 370); Wright v. Adlav, Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 554723 (July 31, 1997,Wagner, J.). "Control is an issue of fact for the trier only where the written lease cannot be said to resolve definitively or expressly the issue of control." Charest v. Burger King Corp., supra, 8 C.S.C.R. 370, citing, Panaroni v. Johnson, 158 Conn. 92, 99, 256 A.2d 246 (1969). CT Page 4220
In the present case, section 10 of the lease between DMALP and Car-G-Cam states, in relevant part, "Tenant shall without limitation keep the demised premises, including equipment, facilities and fixtures therein, and the entire store front . . . at Tenant's expense, clean, neat and in good order, repair and condition. . . ." Section 14(b) of the lease states "Tenant agrees to keep the demised premises free of dirt, fumes, odors, debris, pests and vermin. . . ." Additionally, under Section 25 of the lease, DMALP's access to the Car-G-Cam space was limited to repairing pipes, wiring, columns and other items necessary to the operation of the balance of the mall, and for the purpose of showing the area to a prospective purchaser or mortgagee.
The plaintiff does not refer to any portion of the lease to rebut the defendant's contention that Car-G-Cam is in control and possession of the premises where the alleged slip and fall occurred. The plaintiff's citesWebel v. Yale University, 125 Conn. 515, 7 A.2d 215 (1939) and Corriganv. Antupit, 131 Conn. 71, 37 A.2d 697 (1944) for the proposition that a landowner could be liable for injuries occurring on the leased premises. The citation to these cases is insufficient in opposing DMALP's motion for summary judgment. In Webel v. Yale University, the court provided that a landlord could be liable where the premises is leased for public use where: the defect in question existed before the commencement of the lease, the owner knew or should have known of the defect and the owner knew or should have known that the tenant could not reasonably be expected to remedy the defects. Webel v. Yale University, supra,125 Conn. 522-23. The plaintiff has failed to assert that the gelatinous substance on the floor in the salon existed prior to the commencement of the lease nor has she asserted or provided any reason that DMALP should have known about the potential hazard.
Accordingly, the court finds that under the lease between DMALP and Car-G-Cam, Car-G-Cam had possession and control of the premises where the plaintiff fell and, therefore, DMALP cannot be held liable for the plaintiff's injuries resulting from the fall. The motion for summary judgment as to count two is granted.
 II COUNTS THREE THROUGH SEVEN AGAINST THE CAR-G-CAM OFFICERS
The plaintiff alleges that Car-G-Cam is not a corporation in good standing, which infers that the Car-G-Cam officers are personally liable for the negligence of the corporate entity.[2] The Car-G-Cam officers argue that the sole basis for the inference is Car-G-Cam's failure to file annual or biennial reports with the secretary of state. The Car-G-Cam officers argue that this failure does not allow the plaintiff CT Page 4221 to pierce the corporate veil of Car-G-Cam to sue the officers personally and as individuals.
The meaning of the separate legal existence of a corporation is that the corporation's shareholders, being separate and distinct from the corporate entity, are not, in their capacity as shareholders, individually liable for corporate debts. Nevertheless, the corporate form may not be used unfairly or wrongfully. If violated, the separate existence of the corporation may be disregarded and individual liability may be imposed on a controlling person where the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. This is the doctrine of piercing the corporate veil. S. Cross, Connecticut Corp. Law Practice, § 3.9 (Prentice Hall Law Business, 1990). "[A] court will disregard the corporate structure and pierce the corporate veil only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." (Citations omitted; internal quotation marks omitted.) SFA Folio Collections, Inc. v. Bannon,217 Conn. 220, 230, 585 A.2d 666 (1991).
Two rules or tests have been developed by the courts to determine whether to pierce the corporate veil and subject the shareholders to personal liability. These are the instrumentality test and the identity test. Angelo Tomasso, Inc. v. Armor Construction Paving, Inc.,187 Conn. 544, 553, 447 A.2d 406 (1982). "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice inrespect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . . The identity rule has been stated as follows: If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Citations omitted; emphasis in original; internal quotation marks omitted.) Davenport v. Quinn,53 Conn. App. 282, 300-01, 730 A.2d 1184 (1999). Furthermore, "[t]he concept of piercing the corporate veil is equitable in nature and courts CT Page 4222 should pierce the corporate veil only under exceptional circumstances." (Internal quotation marks omitted.) Id., 301.
The plaintiff, in her memorandum in opposition to the motion, asserts that since 1991 Car-G-Cam has failed to file any annual or biennial reports with the secretary of state, pursuant to General Statutes §33-953,[3] thereby bringing into question its legal existence and validity as a separate entity. The plaintiff argues that under General Statutes § 33-954 (a),[4] Car-G-Cam is in default and may no longer be in good standing and, therefore, issues of fact exist as to whether the Car-G-Cam officers are personally liable.
The plaintiff's assertion that the language in § 33-954 may allow her to pierce the Car-G-Cam corporate veil is incorrect. First, although overlooked by the Car-G-Cam officers in their memorandum, the secretary of state no longer has the authority to administratively dissolve a corporation for the failure to file annual reports.[5] Thus, although failure to file these reports may render the corporation to be in default under § 33-954, it no longer subjects a corporation to mandatory dissolution.[6] Furthermore, even when the secretary of state was statutorily required to dissolve a corporation for failing to file annual reports, the individual stockholders and officers were not personally liable where the corporation was a defacto corporation.Clark-Franklin-Kingston Press v. Romano, 12 Conn. App. 121, 529 A.2d 240, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987). "The corporation is a de facto corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name. . . . A de facto corporation is an apparent corporate organization asserted to be a corporation by its members and actually existing as such, but lacking the creative fiat of the State. . . . A de facto corporation . . . is an association which actually exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of the law, has no legal right to corporate existence as against a direct attack by the State. . . . A corporation de facto is in plain English a corporation in fact. It can incur obligations as a corporation which do not bind those who associated to constitute it, in their individual capacities." (Citations omitted; internal quotation marks omitted.) Id., 125. Thus, even under the old statutory scheme governing the dissolution of default corporations, the Car-G-Cam officers would not be subjected to personal liability for failing to file annual reports.
The plaintiff has failed to submit any evidence of control or unity of ownership necessary to pierce the corporate veil and subject the Car-G-Cam officers to personal liability for the plaintiff's injuries. She relies solely on the fact that Car-G-Cam failed to file annual CT Page 4223 reports with the secretary of state. As stated above, this failure alone does not permit a plaintiff to impose personal liability on the Car-G-Cam officers. Accordingly, as a matter of law, the Car-G-Cam officers' motion for summary judgment on counts three through seven is granted.
Recapitulating, DMALP's motion for summary judgment as to count two is granted, and the Car-G-Cam officers' motion for summary judgment as to counts three through seven is granted.
Adams, J.