ELIZABETH CORRIGAN *v.* HELEN ANTUPIT.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and WYNNE, Js.

Argued April 6—decided May 17, 1944.

*Warren Maxwell*, with whom was *Raymond J. Cannon*, for the appellant (plaintiff).

*William H. Tribou*, with whom, on the brief, was *Edward I. Taylor*, for the appellee (defendant).

MALTBIE, C. J.  The plaintiff brought this action to recover damages for injuries suffered when she fell by reason of a defect in a platform at the entrance of a store leased by one Ciak but forming a part of a building owned by the defendant.  The trial court gave judgment for the defendant and the plaintiff has appealed.  The trial court found that the platform at the time the plaintiff fell was and had been for a considerable time not reasonably safe for visitors to the store because of certain holes or depressions in it, but

held that no duty rested upon the defendant to repair the defect and that she was not liable for the results of the fall. The contention of the plaintiff is that the defendant is liable under the principle of our decision in *Webel* v. *Yale University*, 125 Conn. 515, 7 Atl. (2d) 215. The only issue before us is the correctness of that claim.

The finding presents this situation: The defendant bought the building in October, 1941. At that time Ciak was a tenant of the store under an oral lease on a month-to-month basis, with rent payable on the first day of each month, and he continued thereafter to be, and at the time of the plaintiff's fall was, in occupancy under such a lease. The platform where the plaintiff fell formed a part of the premises leased to him. Before the defendant bought the premises, Ciak had twice repaired it by filling the depressions with a mixture of tar and stone pounded level with the surrounding surface. The last time he had done this was in June, 1940. When the defendant bought the property, the fill had disappeared and the depressions were in substantially the same condition as they had been prior to the repairs. That was the situation when, on June 6, 1942, the plaintiff fell. The defendant on the first of each month was in the habit of going to the store to collect the rent, and, in entering and leaving it, she passed over the platform. She knew or should have known that the depressions made it unsafe for patrons of the store who, in considerable numbers, passed over it.

Liability under the doctrine of *Webel* v. *Yale University*, supra, is not restricted solely to dangerous conditions due to such structural defects as were before us in that case and in *Hahn* v. *Musante, Berman & Steinberg & Co., Inc.*, 130 Conn. 441, 35 Atl. (2d) 201, but may arise where such a condition results from

disrepair. Three of the four illustrations of the application of the doctrine given in the Restatement, 2 Torts, § 359, p. 973, are cases of disrepair. See also *Lucas* v. *Brown,* 82 Fed. (2d) 361; *Junkermann* v. *Tilyou Realty Co.,* 213 N. Y. 404, 409, 108 N. E. 190; *Folkman* v. *Lauer,* 244 Pa. 605, 609, 91 Atl. 218; *Campbell* v. *Portland Sugar Co.,* 62 Me. 552, 564, and various cases discussed by Prof. Eldredge in his article 84 Pennsylvania Law Review 467, reprinted and expanded to include more recent cases in his work Modern Tort Problems, p. 113. The fact that the dangerous condition had its origin in a neglect to repair defects may, however, be an important factor in the case. As we said in the *Webel* case (p. 523), "An important limitation upon the landlord's liability is that such liability does not arise unless he has reason to expect that the tenant will not take steps to remedy or guard against injury from the defect." In determining whether the landlord should have had that expectation, one of the most important considerations, and it may well be the controlling consideration, is the nature of the defect. If it is a condition which inheres in the structure of the building, the tenant may have no right under his lease to make the change necessary to remedy it; if it arises out of disrepair, the extent of the work necessary to restore the premises to a proper condition, when related to the nature and use of the property and the length of the tenancy, may be of great significance; Restatement, op. cit., § 359, comment e; and the facts that the defect is one which will obviously expose to danger those visiting the premises to do business with the tenant and that he can easily make the necessary repairs, point to a conclusion that the landlord might well anticipate that the tenant would take steps to guard his patrons from the danger. The question is one of fact the de-

cision of which may be affected by considerations other than the nature of the defect.

The trial court, however, as we understand the record, did not rest its decision upon the ground that the plaintiff had failed to prove that the condition of liability we have been discussing was not satisfied. Rather, its determining conclusion was that, as the defect resulted from ordinary wear and tear and as it arose during the continuing occupancy of the premises by the tenant under a month-to-month lease, the defendant would not be liable. The principle involved is the same as that which controls where the question is the liability of a landlord for a nuisance existing on leased premises. *Lucas v. Brown*, supra, 364; 1 Tiffany, Landlord & Tenant, § 102. In *Swift & Co.* v. *Peoples Coal & Oil Co.*, 121 Conn. 579, 592, 186 Atl. 629, we said that ordinarily a landlord is not liable for a nuisance on leased premises where it did not exist when occupancy under the lease began or it was not a result reasonably to be anticipated from use of the premises for the purpose and in the manner intended; we stated that the reason why the landlord is not liable for a nuisance arising during the tenancy is that he is without power to control the use of the premises while the tenancy continues; but we held that if a nuisance arises from their use during the period of the lease the landlord does have it within his power to abate that nuisance at the expiration of the period for which they were rented and if, knowing that the nuisance exists, he does not do this but renews the lease liability then attaches. We supported that conclusion by citing several decisions in other states, but none of those cases presented a situation of a continuing occupancy under successive leases from month to month.

There is some conflict in the decisions upon the

question whether a landlord by a renewal of leases of this nature, without any resumption of possession, will be liable for a nuisance arising during the occupancy and in existence at the beginning of the last tenancy. 1 Tiffany, Landlord & Tenant, § 106; 32 Am. Jur. 647; note, 25 L.R.A. (N.S.) 849. Where, as in England and in some jurisdictions in this country, the tenancy from week to week or month to month does not of itself terminate at the end of each week or month but requires notice from the landlord to bring it to an end, the situation might well be regarded as not within the rule stated in the *Swift & Co.* case. *Bowen* v. *Anderson,* [1894] 1 Q. B. 164; *Ward* v. *Hinkleman,* 37 Wash. 375, 381, 79 Pac. 956; *Strong* v. *Soodvoisky,* 141 Ill. App. 183, 185. That might also be so where a holding over is regarded not as creating a new tenancy but merely as prolonging the period of the original tenancy. See 32 Am. Jur. 87. Such decisions are not, however, applicable to the situation in this state. Section 5021 of the General Statutes provides: "No holding over by any lessee, after the expiration of the term of his lease, shall be evidence of any agreement for a further lease; and parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only." Ciak's lease fell within this statute. At the end of each month his lease for that month ended and with the payment of his rent upon the first day of the next month a new lease began. "Such a tenancy is not regarded as a continuous tenancy, but as one for recurring monthly periods recommencing each month." *Williams* v. *Apothecaries Hall Co.,* 80 Conn. 503, 506, 69 Atl. 12. It necessarily follows that the situation before us was one where, on the first day of the month during which the plaintiff fell, the defendant entered

into a new lease and if there existed at that time a condition upon the premises which brought the case within the principle of the *Webel* decision, the defendant would be liable. See *Bronheim* v. *Kelleher,* 258 App. Div. 972, 16 N.Y.S. (2d) 898; *Griffith* v. *Lewis,* 17 Mo. App. 605, 613; *Donk Bros. Coal & Coke Co.* v. *Leavitt,* 109 Ill. App. 385, 390 (decided without reference to the statute held controlling in *Strong* v. *Soodvoisky,* supra).

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.