### ELIZABETH CORRIGAN
*vs.*
### HELEN ANTUPIT

Superior Court        Hartford County        File No. 68044

MEMORANDUM FILED NOVEMBER 27, 1944.

*Warren Maxwell,* and *Raymond J. Cannon,* of Hartford, for the Plaintiff.

*William H. Tribou,* of Hartford, for the Defendant.

O'SULLIVAN, J.   On October 1, 1941, the defendant became the owner of the land and building locted at No. 2058 Park Street, Hartford.   For several years before that date, one Ciak, as a tenant of the then owner, had been conducting a grocery business in the corner store of the building.   There was but one entrance to the store and patrons were required, in order to reach the doorway, to step up and walk over what, for want of a better designation, I shall call a platform, which consisted of a hard, strong composition.   When the defendant acquired title to the premises, the platform had in its surface three good-sized holes located in the path over which Ciak's patrons would naturally pass.   These holes had originally appeared several years previously and Ciak, who was a tenant at the time, had twice packed them with a mixture of tar and pebbles.   But as time passed, the patches were worn away so that by October 1, 1941, the depth of the holes varied from one-half to one and one-quarter inches, and in this condition,

which was one of danger, they continued to remain until the day the plaintiff fell. This occurred on the morning of June 6, 1942.

Mrs. Corrigan had been shopping on that day and had already made some purchases before she entered Ciak's store. It was her first visit to his place. She bought some article or other from a clerk and then proceeded to leave with packages in each arm. She pushed the screen-door outward and as space of the platform was such as somewhat to cramp her, she turned around so that she could then shut the door. Having done this and while in the act of facing outward again, she moved her foot in such a position that her heel caught in one of the holes over which she had passed when entering the store but which she had not observed. She was pitched backward and sustained the injuries for which she seeks to recover.

Ciak's tenancy, both under the former owner and the defendant, had been that of month to month. Such a tenancy is not regarded as continuous but as one for recurring monthly periods recommencing each month. *Williams vs. Apothecaries Hall Co.,* 80 Conn. 503, 506. Ordinarily, a landlord is not liable for a defective and dangerous condition on leased premises where it did not exist when occupancy under the lease began or it was not a result reasonably to be anticipated from use of the premises for the purpose and in the manner intended; however, if such a condition arises from their use, the landlord has it within his power to remedy the danger at the expiration of the lease, and if, knowing of the condition, he re-leases without doing anything about it, liability then attaches. *Swift & Co. vs. Peoples Coal & Oil Co.,* 121 Conn. 579, 592. The same principle is applicable whether the defect is structural or finds its source in wear and tear. *Corrigan vs. Antupit,* 131 Conn. 71, 73. It follows that, with the termination of Ciak's lease each month, a potential opportunity presented itself for the imposition of a duty upon Mrs. Antupit with respect to the premises during the leased term about to begin.

This duty would arise only in the event that she should have appreciated the risk to Ciak's patrons from the defective platform and then only if she had reason to expect that Ciak was not going to take steps to remedy the condition or guard against injury from the defect. *Webel vs. Yale University,* 125 Conn. 515, 523.

As previously pointed out, the platform over which the public was invited to pass was in a dangerous condition and had been so ever since Mrs. Antupit bought the property, nine months before. She knew the public used the platform and she either knew or should have known of the danger. It was a condition which her knowledge, whether actual or implied, should have told her exposed Ciak's patrons to an unreasonable risk.

Furthermore, the evidence—and its absence, for Mrs. Antupit did not take the stand to testify—states with authority that she had reason to expect that Ciak did not intend to eliminate the danger. Her visits to the store, recurring, as they did, at least once a month since the preceding November, gave her ample opportunity not only to see the condition with more or less regularity but also to note that the tenant was doing nothing about it. It might well be that when she first observed or should have observed the holes and appreciated the risk, the condition seemed of such a nature as to warrant the feeling that Ciak, even though holding under but a month's tenancy, would at least patch them up, a job of a relatively minor nature.

I have not overlooked the small amount of work and the insignificant cost involved in making repairs as it affects the question of whether Mrs. Antupit had reason to believe that Ciak would not remedy the condition. "In determining whether the landlord should have had that expectation, one of the most important considerations, and it may well be the controlling consideration, is the nature of the defect. . . . If it arises out of disrepair, the extent of the work necessary to re- store the premises to a proper condition, when related to the nature and use of the property and the length of the tenancy, may be of great significance; and the facts that the defect is one which will obviously expose to danger those visiting the premises to do business with the tenant and that he can easily make the repairs, point to the conclusion that the landlord might well anticipate that the tenant would take steps to guard his patrons from the danger." *Corrigan vs. Antupit, supra,* p. 74.

But weighty as is this consideration, and controlling as it may be at times, it loses force in the light of the present circum- stances. A more commanding factor is that as month after

month rolled by, the holes still remained as a source of danger and Ciak had done nothing about them. There was every reason, accentuated as term after term began and expired, for the defendant to expect that her tenant had no intention of doing anything. Though the nature of the defect is important, it must yield to the weightier factor I have just mentioned.

I can, therefore, reach no other conclusion than that at the beginning of a tenancy prior to the day the plaintiff fell, it be-came Mrs. Antupit's duty to remedy the condition. Having failed to honor that duty, she was guilty of negligence and this negligence was the sole proximate cause of the plaintiff's fall.

Mrs. Corrigan's main injury consisted of a compressed frac-ture of the twelfth dorsal vertebra, the result of which will be a permanent, partial disability. The details of her injuries need not be recounted, though they were painful, serious and severe.

Judgment may enter for the plaintiff to recover $8,596 damages.