Kathryn J. PRITCHETT, Plaintiff-Appellee,

v.

Louis ROSOFF et al., Defendants-Appellants.

No. 696, Docket 75–7565.

United States Court of Appeals, Second Circuit.

Argued May 10, 1976.

Decided Nov. 22, 1976.

Robert C. Flanagan, New Haven, Conn. (John C. Flanagan, and Flanagan & Flanagan, New Haven, Conn., on the brief), for defendants-appellants.

Stephen I. Traub, New Haven, Conn. (Lynch, Traub, Keefe & Marlowe, New Haven, Conn., on the brief), for plaintiff-appellee.

Before MOORE and TIMBERS, Circuit Judges, and NEWMAN, District Judge.*

TIMBERS, Circuit Judge:

Kathryn J. Pritchett, a Mississippi citizen, commenced this diversity action on June 18, 1969 to recover damages for personal injuries she sustained on July 4, 1968 while riding a horse on one of the trails maintained by a riding stable known as the B–Z Pony Ranch, Inc. in East Haven, Connecticut. The stable, which also owned the horse plaintiff was riding, was operated under various names by Robert J. Zacks and members of his family (the Zacks), all of whom were Connecticut citizens; were named as defendants; but are not appel-

---

* Hon. Jon O. Newman, United States District Judge, District of Connecticut, sitting by designation.

lants herein.[1] The Zacks leased the property on which the stable and trails were located from members of the Rosoff family (the Rosoffs), all of whom were citizens of Massachusetts, Minnesota or Connecticut; were named as defendants; and appear in the caption as appellants herein.

Upon the failure of the Zacks to appear to defend the action, a default judgment was entered against them. After a two day jury trial in the District of Connecticut before Thomas F. Murphy, *District Judge*, the case was submitted to the jury only against the Rosoffs as owners of the property on which the accident occurred. On June 6, 1975 the jury returned a verdict awarding plaintiff $112,000 damages against the Rosoffs. From the judgment entered on that verdict, the Rosoffs now appeal.[2]

The essential questions on appeal are (1) whether there was sufficient evidence from which the jury could find that plaintiff sustained her injuries as a result of a defective riding trail; (2) whether there was sufficient evidence from which the jury could find that under Connecticut law the landowners were liable for defects on the premises which the lessees controlled; and (3) whether the district court erred in allowing plaintiff's counsel to question a representative of the lessees about their insurance obligations under their lease with the owners.

Appellants do not claim that the verdict was excessive.

We affirm.

## I.

In order to focus upon the asserted liability of the Rosoff defendants, it is necessary to back up a bit from the occurrence of the accident on July 4, 1968 and to summarize only those facts required for an understanding of our rulings on the questions raised.

■ B–Z Pony Ranch, Inc. occupied and used some 76 acres of land owned by the Rosoffs in East Haven. Between May 2, 1967 and April 30, 1968 Robert J. Zacks had a written lease with the Rosoffs for use of the property as a riding stable open to the public. After the lease expired on April 30, 1968, Zacks continued to occupy the property and to use it for a stable as before with the Rosoffs' consent. Under Connecticut law, Zacks succeeded to a month-to-month tenancy upon expiration of the written lease.

It is undisputed that plaintiff was injured while riding on one of the trails at the B–Z Ranch on July 4, 1968 when her horse slipped and fell on top of plaintiff, crushing her right hip and leg. She was hospitalized for seven months, most of which she spent in traction. One of the results of her injuries is a 50% loss of function of her right leg which is one inch shorter than the left.

Plaintiff's essential claims of negligence were that her horse slipped and fell when the trail, softened by three weeks of steady rainfall, crumbled beneath the horse's foot; and that the trail on which the accident occurred was too narrow for riding.

There was evidence—chiefly plaintiff's testimony—from which the jury could have found substantially as follows. On the day of the accident she came to the B–Z Pony Ranch to go riding. She told Robert Zacks that she was a novice. He assigned to her one of his more gentle horses. She went out on the trail along with nine or ten other persons, all on horseback. They rode in single file, led by Zacks' 14 year old daughter, Jo Ann. Plaintiff rode third from the rear.

It had been raining steadily in the area since mid-June, leaving the ground soft and slippery. There were mud spots all along

---

1. The complaint named the following Zacks defendants as lessees of the property: Robert J. Zacks, Jo Ann Zacks, B–Z Pony Ring, Meyer Riding Stables and B–Z Pony Ranch, Inc.

2. They also appeal from the denial of their various motions, including motions for a directed verdict, to set aside the verdict and for a new trial. Our affirmance of the judgment is dispositive of appellants' claims with respect to the denial of their motions.

the trail upon which the group rode. At some places the hoof of plaintiff's horse went into the mud several inches "and made a slurping sound as it pulled out."

The group came to a halt on the trail at a point where there was a flat area, about five feet wide, with bushes on the bank to the right and on the left a ditch four feet deep. As the group stood still on the trail, plaintiff felt her horse shifting its weight. Suddenly, according to plaintiff, "[I]t felt as if his left back foot slipped and the dirt crumbled away underneath it, and he fell on his side." Plaintiff was thrown into the ditch. Her horse landed on top of her, resulting in the crushing injuries stated above. As she lay on the ground plaintiff was able to see "the dirt where it had crumbled away on the side of the trail as [the horse] fell."

The only evidence adduced by appellants as to the occurrence of the accident was on cross-examination of Jo Ann Zacks, a plaintiff's witness. Miss Zacks did not see plaintiff fall. She testified that there was nothing unusual about the trail on the day of the accident. She was not asked by appellants' counsel whether the trail was wet. Both Jo Ann and Robert Zacks testified that the trail where the accident occurred was wide enough to drive a truck on it.

Abraham Rosoff managed the Rosoffs' interest in the property. He visited the stables on numerous occasions and knew that the trails were used for riding. He had not inspected the trails during Zacks' tenancy. Most of the trails had been made by Zacks. The trail on which the accident occurred, however, was in existence before Zacks first leased the property.

Under the written lease between Zacks and the Rosoffs, the lessee was obligated to make all repairs. The lessee also was obligated to purchase liability insurance. In response to questioning by plaintiff's counsel, Zacks admitted that he had not purchased the liability insurance required by the lease. He testified that he had told Rosoff that he had not obtained the insurance because he did not want to pay for it. There was evidence that Rosoff knew the

B–Z Ranch was incorporated, and that Zacks therefore was immune from personal liability. Zacks testified that Rosoff knew that Zacks' riding stable business was losing money.

## II.

We turn to appellants' claim that there was insufficient evidence to support the jury's verdict to the extent that it represented findings, first, that plaintiff's injuries resulted from a defective riding trail, and, second, that under Connecticut law the landowners were liable for defects on the premises under the lessees' control. We hold that there was sufficient evidence to support the jury's verdict in both respects.

■ In ruling on a claim of insufficiency of the evidence in a case in the posture of the instant one, it is axiomatic that the evidence must be viewed in the light most favorable to plaintiff as the prevailing party, since a verdict will not be set aside unless reasonable men could not have returned such a verdict. See, e. g., *Fortunato v. Ford Motor Co.*, 464 F.2d 962, 965 (2 Cir.), *cert. denied*, 409 U.S. 1038 (1972); cf. *Simblest v. Maynard*, 427 F.2d 1, 4 (2 Cir. 1970).

■ As for the defective riding trail aspect of the insufficiency claim, it is undisputed that there was a four foot ditch on one side of the portion of the trail where the accident occurred. It had been raining steadily for three weeks prior to the accident. The trails were soft and slippery. Plaintiff felt her horse lose its footing. She saw the ground that crumbled beneath the horse's weight. Appellants introduced no evidence to contradict the substance of plaintiff's testimony about the condition of the trails.

■ As for the other aspect of the insufficiency claim, under Connecticut law the landowner ordinarily is not liable for defects on premises within the tenant's exclusive control unless (1) the landowner leased the premises for a use open to the public; (2) the defect in question was in existence at the beginning of the lease; (3) the landowner knew or should have known of the defect; and (4) the landowner knew or

should have known that the tenant could not reasonably be expected to remedy or guard against injury from the defect. *Webel v. Yale University*, 125 Conn. 515, 7 A.2d 215 (1939); see also *Corrigan v. Antupit*, 131 Conn. 71, 37 A.2d 697 (1944).

Here appellants leased the property to Zacks specifically for the purpose of enabling him to operate a public riding stable. When the written lease expired on April 30, 1968, Zacks succeeded to a month-to-month tenancy which commenced anew at the beginning of each month. *Corrigan v. Antupit, supra,* 131 Conn. at 75–76. The leasehold which existed at the time of the accident on July 4, 1968 began on July 1, 1968— not when the tenant first took possession of the property. Here, as in *Corrigan,* "It necessarily follows that the situation before us was one where, on the first day of the month during which the plaintiff fell, the defendant entered into a new lease and if there existed at that time a condition upon the premises which brought the case within the principle of the *Webel* decision, the defendant would be liable." *Id.* at 76–77.

There was evidence from which the jury would have been warranted in finding that the narrowness of the trail, the presence of a four foot ditch along a trail used by novice riders in all types of weather, or the soft and slippery soil conditions caused by three weeks of steady rain constituted defects, taken alone or together. The ditch and the trails both were in existence at the time the monthly leasehold began on July 1, 1968. In view of the substantially uncontradicted evidence that it had been raining steadily since mid-June, the jury also was entitled to find that the ground was soft and slippery for several days prior to July 4.

There also was sufficient evidence from which the jury could find that the landown-

ers knew or should have known of the defects. Although there was no evidence that Abraham Rosoff had inspected the trails after the Zacks took possession of the property, the trail on which the accident occurred was in existence *before* the Zacks took over. Moreover the jury would have been justified in finding that Rosoff should have known that the ground was soft and slippery on the day of the accident, in view of the testimony that it had been raining steadily since mid-June. Common sense should have put the landowners on notice that heavy rains make the ground soft and slippery.

Finally, there was sufficient evidence from which the jury could have found that appellants had reason to know that Zacks could not reasonably be expected to remedy the defects or protect the public from them. Abraham Rosoff knew that Zacks had incorporated to protect himself from personal liability. Rosoff also knew that Zacks' business was losing money and that he had not obtained liability insurance because he did not want to spend money for it.

■ We hold that there was sufficient evidence from which the jury could find under Connecticut law that appellants were liable as landowners for the defects on the premises under the lessees' control.[3]

### III.

Appellants claim that the district court erred in allowing plaintiff's counsel to question Robert Zacks about the lessees' obligation under the written lease with the Rosoffs to purchase liability insurance. They argue that this line of questioning was irrelevant and prejudicial since the written lease was not in effect at the time of the accident and since the terms of the written

---

**3.** Judge Moore has based his dissent "on the ground that the trial judge erroneously instructed the jury that the defendant property owners had a continuing duty to inspect the property leased to Zacks." 546 F.2d at 468.

We think that the dissent on this ground must be read in light of the record before us which discloses (1) that appellants did not object *at trial* to the court's charge in this respect

or in any other respect as required by Fed.R. Civ.P. 51, and (2) that appellants did not make any such claim *on appeal* before us in their brief or in oral argument. Defendants' counsel doubtless did not pursue the point at trial or on appeal because the trial court's charge, taken as a whole, did not convey to the jury the incorrect standard of law that Judge Moore interprets it to contain.

lease did not carry over to the month-to-month tenancy.

█ We hold this claim to be without merit. Regardless of whether the terms of the written lease carried over to the month-to-month tenancy, appellants' knowledge that Zacks failed to obtain insurance during the period of the written lease, and thereafter, was relevant to the issue of whether appellants knew or should have known that Zacks could not reasonably be expected to remedy the defects or protect the public from them.

Affirmed.

MOORE, Circuit Judge (dissenting):

I dissent from the majority's affirmance of the verdict on the ground that the trial judge erroneously instructed the jury that the defendant property owners had a continuing duty to inspect the property leased to Zacks.

Under the "public use" exception to the general rule absolving absentee landlords of responsibility for premises in the possession of the tenant, a landlord will be held liable where (1) the premises in question are open to the public and the landlord knew of same; and (2) the defect in question, which caused the third party's injury was in existence at the commencement of the operative lease period; and (3) the landlord knew or should have known of the defect; and (4) the landlord knew that the tenant could not or would not remedy the defect. *Webel v. Yale University*, 125 Conn. 515, 7 A.2d 215 (1939); *Corrigan v. Antupit*, 131 Conn. 71, 37 A.2d 697 (1944).

Where, as here, the tenancy is month-to-month, the point in time which marks the commencement of the lease period is the first day of the month, or the day on which rent is due. *Corrigan v. Antupit, supra*, 131 Conn. 71, 37 A.2d at 699. This is true irrespective of the period of time that the tenant has been in possession on a month-to-month basis, *Ibid.*, and it is also true irrespective of the existence of a prior written lease establishing the landlord-tenant relationship.[1] *Id., see also* Conn.Gen.Stat. 47–22.

Pritchett's (plaintiff) apparent theory of liability here was that the period of rain which preceded the date of the accident left the trails so wet as to present a serious hazard to riders, of which the landlord should have been aware (*i. e.*, plaintiff was relying on constructive, not actual, notice). Under Connecticut law, plaintiff was required to show that the defective condition of the trail on which she fell was in existence at the beginning of the lease period—here, the beginning of July, 1968. The testimony given at trial included mention of wet weather conditions that had prevailed prior to the date of the accident on July 4. However, the record is completely devoid of *any* evidence that the alleged condition which caused the horse to slip was one which was in existence at the beginning of July. On the contrary, the only evidence given was to the effect that the trail was in good condition the day before the accident.

Since the plaintiff introduced no proof which bore on the condition of the trail at the beginning of the lease period, it is doubtful whether the jury verdict could have rested on anything but speculation and conjecture,[2] even assuming that the jurors were correctly instructed on the law by the Court. The jurors were not, however, correctly instructed.

The Court erroneously instructed the jury that they could hold the landlord liable if they found that he had had a reasonable opportunity to discover the defect through inspection; the Court's instruction imposed on the landlord a continuing duty to inspect

1. Defendants' argument that the month-to-month tenancy incorporated the terms of the prior written lease (which absolved the landlord of all liability) misses the point, since— even assuming, *arguendo*, that the terms of the lease were extended—the landlord could not, on public policy grounds, make a private contract to absolve him of duties owed to the public.

2. Since conjecture and speculation are impermissible bases for a jury verdict, the verdict is susceptible to impeachment on this ground alone.

the premises for defects arising *during* the tenancy. This is completely contrary to the rule in *Webel* under the "public use" exception.

The Court apparently took its charge almost verbatim from the language in a case called *Pollack v. Gampel*, 163 Conn. 462, 313 A.2d 73, 78 (1972). *Pollack*, however, dealt with a completely different form of landlord liability, namely, the direct liability of a landlord to a tenant for injuries caused by negligent maintenance of property which remained in the landlord's possession and control. Requiring the landlord to maintain the said property in a safe state through periodic inspection is, of course, entirely reasonable under circumstances where the landlord remains in possession. Where, however, a landlord has relinquished property to a tenant who is in *exclusive* possession, dominion, and control over it, such a duty of continuing inspection would be unreasonable and, accordingly, Connecticut law does not hold the landlord to such a duty. This is the rationale behind *Webel* and its progeny, which have limited the landlord's liability to only those defects in existence at the time the landlord entered into the most recent lease (written or oral) with the tenant.

As a practical matter, the tenant here had been in continuous possession for a number of years. However, since the tenancy at the time of the accident was month-to-month, the defect need only have been in existence since the beginning of the month during which the accident occurred.

In either case, the Court's charge in this case held the owners to a continuing duty of inspection which they clearly did not owe to the plaintiff under the law. The error in the Court's charge is not a matter of mere linguistics: it goes to the heart of the owner's liability, imposing upon them a duty which they clearly do not owe the plaintiff under the law.

Although the plaintiff has suffered *bona fide* injuries (albeit as the result of her poor judgment in choosing to ride on wet trails), and although the prolongation of litigation is not a pleasant prospect, nevertheless the jury verdict should be vacated, on the ground the trial court imposed upon the owners a duty which the law does not, namely, to inspect and rectify defects which arise *after* the commencement of a tenancy on property which is in the sole possession and control of the tenant. Such a duty is completely contrary to the law of Connecticut and to common sense as well.

I would vacate the judgment in plaintiff's favor and remand for a new trial.