[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 12404
This commercial summary process action raises numerous issues concerning the legal status of the parties relationship after a commercial tenant has held over upon the expiration of a written lease which contained no holdover clause.
FACTS
The court finds the following facts: The plaintiff is the owner of a commercial building known as 70 Reef Road, Fairfield, Connecticut. Effective April 15, 1988, the plaintiff rented the premises at 70 Reef Road, Fairfield, Connecticut to Timothy's Ice Cream Inc. The term of the written lease expired on April 1, 1993. The rent for the entire term was to be paid at the rate of $1500.00 per month. During the term of the lease the parties modified the rental payments, due to the defendant's cash flow to the sum of $375.00 per week for the first four weeks of each calendar month, for the total payment of $1500.00 per month rent.
The lease contained the following option clause. "I will have the option to rent the premises for an additional period of five years. The terms and provisions of a renewal lease shall be agreed at the time of renewal." The lease was prepared by the defendant. Neither the plaintiff nor the defendant consulted with an attorney during the preparation and execution of the lease. The lease contained no method for the exercising of the option. The lease was silent as to whether the option must be exercised in writing. There was no hold over provision in the lease. The lease did not contain any other terms or provisions for the five year option period.
During the period of the initial lease the plaintiff became concerned about the defendant's ability to continue to comply with the terms of the lease. The defendant failed to pay for minor repairs as set forth in the lease, failed to provide a certificate of insurance as required by the lease and failed to maintain the premises in a safe condition as required by the lease terms. Furthermore the defendant's principal officer, Timothy Larkin stated to the plaintiff that his business was poor. The parties orally modified the written lease requiring that the $1500 rent be paid on a weekly basis instead of a monthly basis. The rent remained at the same rate. On March of 1992 the plaintiff became even more concerned about the defendant's ability to continue on with the lease, when the CT Page 12405 plaintiff read a newspaper article indicating that Mr. Larkin had placed Timothy's Ice Cream Inc. at 70 Reef Road Fairfield on the market for sale as well as another Timothy's Ice Cream, Inc. location in Shelton Connecticut.
When April 1, 1993 arrived the plaintiff and the defendant, acting by Timothy Larkin, did not speak or correspond with each other about the continuation of occupancy or any other terms and conditions of the continued occupancy. The plaintiff testified that as of April 1, 1993 she did not intend to renew the lease. On April 2, 1993 the plaintiff received a certified letter from the defendant. She signed the certified, mail receipt for the letter. The letter was dated March 30, 1993. The letter stated as follows "Timothy's Ice Cream, Inc. does hereby exercise our five year lease option for the premises located at 70 Reef Road, Fairfield, Connecticut. We assume all terms and conditions of our original lease agreement shall remain the same and shall include an additional five year option commencing April 1, 1998." This notice was signed Timothy Larkin, Timothy's Ice Cream, Inc.
The plaintiff never responded to the defendant's letter. The plaintiff and the defendant never conversed concerning this particular letter nor did they discuss the terms and conditions of the occupancy or the property after April 1, 1993. The plaintiff felt that the option clause required the parties to sit down and discuss the matter and without that conference and agreement there was no valid exercise of the option term. The defendant felt that the option has been exercised upon the same terms and conditions of the prior written lease.
On or about April 1, 1993 the defendant tendered a $375.00 rent check. The defendant tendered each and every weekly check totalling $1500.00 per month on time after April 1, 1993. The plaintiff deposited each of the weekly rental checks tendered by the defendant. The plaintiff did not return any rental checks nor object to the payment of those checks.
On April 17, 1995 the plaintiff caused a notice to quit to be served on the defendant, Timothy's Ice Cream Inc. The notice to quit was served on Timothy Larkin, manager, Timothy's Ice Cream, Inc. and service was made at 70 Reef Road, Fairfield, Connecticut in accordance with Connecticut General Statutes § 47a-23(c).
The notice to quit stated three reasons: "Termination of lease", "lapse of time", and "no right to occupy premises". The defendant failed to vacate the premises on the April 30, 1995 quit date. On CT Page 12406 May 1, 1995 the plaintiff instituted this instant law suit seeking possession of the premises on the basis of lapse of time. The plaintiff's complaint in paragraph 6 stated as follows "The written lease terminated by its terms on April 1, 1993 at 12:00 noon, and the lease continued on a month to month basis".
The defendants filed two special defenses. The first special defense claims that the lease had been extended for an additional five year period commencing April 1, 1993 and therefore there is no lapse of time. The second special defense stated: "in the event the written lease terminated as alleged by the plaintiff in paragraph 6 of her complaint, then the lease continued as a verbal year to year tenancy."
Written memoranda and post trial memoranda were submitted by both parties. The case was tried on July 31, 1995. The decision in this case will be made based upon the facts as stated.
DISCUSSION OF LAW
A commercial lease is controlled by common law rules. Thomasv. Roper, 162 Conn. 343, 346 (1972); Hayes v. Capitol Buick Co.,119 Conn. 372, 376-77 (1935); Sigal v. Wise, 114 Conn. 297,304-05 (1932); Lesser v. Kline, 101 Conn. 740, 746 (1925). The parties in the initial phase of the trial were arguing as to whether or not Connecticut General Statutes § 47a-3b applies to a commercial transaction. "Unless the rental agreement fixes a definite term, the tenancy is month to month, except in the case of a tenant who pay weekly rent, then the tenancy is week to week." Connecticut General Statutes § 47a-3b ConnecticutGeneral Statutes § 47a-1 through § 47a-22a defining the rights and responsibilities of landlords and tenants includingConnecticut General Statutes § 47a-3b are not applicable to commercial property. S.H.V.C., Inc. v. Roy, 37 Conn. Sup. 579,585 (1981). Common Law continues to control commercial leases. "At common law the covenants of a lease are deemed to be independent so that a breach of the landlord's promise to perform services would not suspend the obligation of the tenant to pay the rent as agreed." S.H.V.C., Inc. v. Roy, supra 585; SagamoreCorporation v. Willcutt, 120 Conn. 315, 319 (1935); In reEdgewood Park Junior College, Inc., 123 Conn. 74, 77-78 (1937).
Therefore there is no automatic month to month tenancy when the rental agreement does not fix a definite term in a commercial tenancy. Connecticut General Statutes § 47a-3b. There is no CT Page 12407 statutory grace period for a commercial tenancy, despite the fact that the statute indicates there is a nine day grace period for a residential tenancy. Connecticut General Statutes § 47a-15a;Karwosky v. Christofakis, SNBR-436, August 10, 1995 (Tierney, J.). The limitation of Connecticut General Statutes § 47a-1§ 47a-22a to residential tenancies is contained in the use of the words in the statutes themselves which by definition inConnecticut General Statutes § 47a-1 are limited to to dwelling units only. Connecticut General Statutes § 47a-1(h),Connecticut General Statutes § 47a-1(i) and ConnecticutGeneral Statutes § 47a-1(g). The plaintiff also relies onConnecticut General Statutes § 47a-3d (formerly § 47-22) as follows, "Holding over by any lessee, after the expiration of the term of his lease, shall not be evidence of any agreement for a further lease. Parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only." It is upon this statute that the plaintiff drafted paragraph 6 of the complaint claiming that the period of time in which the tenant occupied the premises after April 1, 1993 was as a hold over month to month tenant in accordance with the provisions ofConnecticut General Statutes § 47a-3d.
The original version of § 47a-3d was enacted in 1866. "No holding over by any lessee, after the expiration of the term of his lease, shall be evidence of any agreement for a further lease; and parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only." GeneralStatutes § 5021. This statute has been regularly applied to commercial nonresidential premises. Shulman v. Hartford PublicLibrary, 119 Conn. 428, 432 (1935). The last codification of General Statutes § 5021 that was applied to commercial premises was Connecticut General Statutes § 47-22 (formerly 1949 Rev. S. 7106).
The 1976 session of the legislature created an entirely new series of acts known as the Landlord and Tenant Act. P.A. 76-95,P.A. 76-435. These statutes are essentially Connecticut GeneralStatutes §§ 47a-1 through 47a-20 and are entirely located in Chapter 830. By the use of the definitions in § 47a-1,Connecticut General Statutes § 47a-1 through § 47a-20
have been consistently held to apply to residential premises only. Hoban v. Masters, 36 Conn. Sup. 611, 613 (1980). Therefore after the passage of the two 1976 public acts, ConnecticutCT Page 12408General Statutes § 47-22 still continued in existence and applied to all premises, commercial and residential included.
In 1979 Connecticut General Statutes § 47-22 was transferred to Connecticut General Statutes § 47a-3d by P.A.79-571. That 1979 Public Act transferred Connecticut GeneralStatutes § 47-22 to Chapter 830 where it was renumbered as the current Connecticut General Statutes § 47a-3d. P.A. 79-571 also transferred Connecticut General Statutes § 47-24c,
enacted in 1958 "prohibiting lead paint", to Chapter 830 and recodified it as Connecticut General Statutes § 47a-8.
 Connecticut General Statutes § 47a-1, the definition section since 1979, applies to the entire Chapter 830, "As used in this chapter. . . ." Connecticut General Statutes § 47a-1Definitions. Thus in 1979, by transferring Connecticut GeneralStatutes § 47-22 into Chapter 830, the definitions ofConnecticut General Statutes § 47-1 became applicable. Although Connecticut General Statutes § 47a-3d is careful to use the words "lessee" and "lease" instead of "Landlord", "Tenant" and "rental agreement", the word "rent" appears. "Rent" is defined by Connecticut General Statutes § 47a-1(h) as "all periodic payments to be made to the landlord under the rental agreement." "Rental agreement" is defined by Connecticut GeneralStatutes § 47a-1(i) as "all agreements, written or oral . . . concerning the use and occupancy of a dwelling unit or premises." "Dwelling unit" is defined by Connecticut General Statutes §47a-1(c) as "any house or building, or portion thereof . . . occupied, as a home or residence of one or more persons." "Premises" is defined by Connecticut General Statutes § 47a-1(g)
as a "dwelling unit and the structure of which it is a part and facilities and appurtenances therein and grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant."
Summary process statutes are in derogation of common law and must be strictly construed. Jo-Mark Sand and Gravel Co. v.Pantanella, 139 Conn. 598, 600-601 (1953). Therefore a strict reading of Connecticut General Statutes § 47a-3d using the definitions of Connecticut General Statutes § 47a-1 would require Connecticut General Statutes § 47a-3d to be applicable only to residential premises.
Prior to 1866, common law held that if a tenant, both commercial and residential, held over after the expiration of a CT Page 12409 fixed tenancy of a year, he was responsible to the landlord for another year upon the same terms. Bacon v. Brown, 9 Conn. 334,338 (1848). "And if, during the continuance of a tenancy the tenant abandons the possession of the premises he is much liable for the rent as though he had continued his occupancy." Bacon v.Brown, supra 338. Common law further granted the option to the landlord of either acquiescing in the new tenancy or refuse and treat the tenant as a trespasser or a tenant at sufferance. "If he does accept it by receiving rent, or some other act of acquiesence [acquiescence], a tenancy from year to year results by implication of law". Coleman v. Brigham, 115 Conn. 286, 288
(1932); Shulman v. Hartford Public Library, supra 432.
The 1866 statute, General Statutes § 5021, changed the common law. "The effect of the statute is to abrogate this common-law rule and a mere holding over with consent of the landlord no longer creates a tenancy from year to year, but such a tenancy can only be established by proof of an agreement of both of the parties." Shulman v. Hartford Public Library, supra, 432. For one hundred and thirteen years until P.A. 79-571, the month to month tenancy of a holdover tenant was the Connecticut rule. This rule applied to all tenancies, commercial and residential alike.
Now, with the inclusion of Connecticut General Statutes §47-22 into Chapter 830, the legislature threw into doubt the status of holdover tenants in a nonresidential situation. Strictly construed, Connecticut General Statutes § 47a-3d
applies only to residential premises. Therefore there appears to be four alternatives for holdover commercial tenants with no lease holdover clause: (a) month to month under General Statutes§ 5021 by interpreting the definition section of ConnecticutGeneral Statutes § 47a-1 to be applicable to all Chapter 830 statutes except Connecticut General Statutes § 47a-3d; (b) year to year by reapplying the pre-1866 common law; (c) five year lease by finding that the option to extend the lease was properly exercised or the proper exercise was waived by the actions of the parties; or (d) a tenancy at sufferance.
This is the principal issue raised by this case. It is an issue not yet ruled on in Connecticut. How does the summary process statute operate in a commercial setting and what is its effect on a commercial lease which is creature of common law and continue to be ruled on and interpreted by common law not contract standards? This issue is of interest to the Connecticut CT Page 12410 Supreme Court. Sullivan v. Nameaug Walk-In Medical Center P. C.,233 Conn. 213, 214 (May 16, 1995) stated that "we do not have an appropriate opportunity for a searching analysis of the relationship between the terms of a commercial lease and the requirements of a statutory action for summary process under § 47a-23 (a). Accordingly, we conclude that the appeal must be dismissed because certification was improvidently granted."
"It is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature."In re Valerie D. 223 Conn. 492, 512 (1992). "The intention of the legislature is found not in what it might have meant to say, but in the meaning of what it did say." Colli v. Real EstateCommission, 169 Conn. 445, 452 (1975). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement and to its relationship to existing legislation and common law principles governing the same general subject matter." State v. Cobb,234 Conn. 735, 747 (1995). "We presume that laws are enacted in view of existing relevant statutes and that the legislature intended them to be read together so as to constitute are consistent body of law." PARCC, Inc. v. Commission on Hospitals and Health Care,235 Conn. 128, 141-142 (1995). "It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather from the statutory scheme as a whole. Furthermore, in reviewing the statutory language, we will assume that the legislature intended to accomplish a reasonable and rational result" [internal quotation marks and citations omitted]. State v. Breton,235 Conn. 206, 226 (1995). "We cannot presume that the legislature intended to create such a bizzare result, but intended a sensible statutory construction." (internal quotation omitted) DeMilo v.West Haven, 189 Conn. 671, 679 (1983) (internal quotation omitted). State v. Campbell, 180 Conn. 557, 563
(1980). State v. Cobb, supra 773.
Connecticut case law holds that the fact that a tenant holds over after a lease expires is not alone sufficient to create a new lease. DiCostanzo v. Tripodi, 137 Conn. 513, 515 (1951),Shulman v. Hartford Public Library, supra 432. "Our Supreme Court held that a tenant's continued occupancy after expiration of a lease and payments of increased rent required by a renewal option is not evidence of an agreement of a future lease." Johnson v.The Mary Oliver Candy Shop, Inc., 116 Conn. 86, 89 (1933). DavidA. Altschuler Trust v. Blanchette, 33 Conn. App. 570, 574 (1994). CT Page 12411 A new lease is created only if the tenant holds over with the landlord's acquiescence. Berlingo v. Sterling Ocean House, Inc.,5 Conn. App. 302, 308 (1985), Byxbee v. Blake, 74 Conn. 607, 610
(1902). In any event for a new lease to be crested there must be a meeting of minds on all the essentials of the lease. Welk v.Bidwell, 136 Conn. 603, 607 (1950). For example, if the landlord accepts a rent payment from a month to month tenant the combination of holding over, payment and acceptance creates a new lease, even if the amount was less than landlord requested. Baierv. Smith, 120 Conn. 568, 571 (1935).
A new lease may also be created by implication. Welk v.Bidwell, supra 607. A lease by implication can be found if the tenant holds over and circumstances reasonably suggest an intention to renew the lease. Freshwater Pond Apartments v.Olivera, H-730, March 4, 1986, (Goldstein, J.). In the usual oral residential and commercial month to month tenancies if a tenant continues occupancy into the next month and there has been no communication whatsoever between the landlord and the tenant, a court would ordinarily find a new lease by implication arose on the first day of the month, and, as a result the tenant would be liable for the entire month's rent. Webb v. Johnson, H-861, June 3, 1988 (Doyle, J.). "A person's intention in any regard is to be inferred from his conduct." Kiernan v. Borst, 144 Conn. 1, 6, (1956). Usually intent can only be proven by circumstantial evidence. Caron's Auto Parts, Inc. v. Commissioner of MotorVehicles, 1 Conn. Ops. 860 (August 7, 1995).
The parties tried this case on the theory of whether or not the "option clause" of the lease was a "covenant to renew a lease" or "covenant to extend a lease." Our case law recognizes a technical distinction between a covenant to renew a lease and a covenant to extend a lease. Johnson v. The Mary Oliver CandyShops, Inc., supra 89; City Coal Co. v. Marcus, 95 Conn. 454, 459
(1920). A covenant to renew a lease requires a new written instrument, whereas a new written instrument is not required by a covenant to extend because the original lease operates as a continual one. City Coal Co. v. Marcus, supra 459.
 Any lease, by agreement of the parties may provide for a tenancy beyond the minimum terms therein, in two well-recognized ways: one, by means of a covenant to renew the lease for a certain specified term upon the expiration of the term of the original lease, which covenant contemplates a further lease to be entered CT Page 12412 into by the parties; the other, by means of what are termed agreements for extension. These latter come into existence by use of a great variety of phrases, such as `the privilege of two more years if desired' or `with right to remain for a further period of _______________ if he so elect' or `the privilege of continuing this lease for ______________.' When such expressions are used, the original lease operates as a continuous one, and the holding for a term exceeding the minimum provided in the agreement, does not require any additional instrument to give it validity. The statute of frauds is satisfied by the original lease, if it is one required to be in writing.
City Coal Co. v. Marcus, supra 459.
This distinction is particularly important if a question of satisfaction of the statute of frauds is involved. David A.Altschuler Trust v. Blanchette, supra 572. The parties agreed that there was no new written instrument renewing this particular lease. They do not contest the fact that each week the $375.00 agreed upon rent was tendered and accepted without objection by the plaintiff until the service of the 1995 notice to quit.
The plaintiff claims that the "option clause" of the lease is a covenant to renew and thus there is a requirement of a new written instrument. The plaintiff claims that there was not a valid exercise of the option to renew for five years and the lease was no longer in full force and effect.
The defendant on the other hand claims that this "option clause" was a covenant to extend. It claims that the original lease operates as a continuous lease. There is no requirement for the satisfaction of the statute of frauds since the original lease was already executed by the parties to be charged.Connecticut General Statutes 652-550. David A. Altschuler Trustv. Blanchette, supra 572. The defendant further argues that the parties had agreed upon the $375.00 per week, i.e. $1500.00 per month rent and the lease was extended for an additional five year period of time upon the same terms and conditions by its payment and the plaintiff's acceptance of without any objection for more than a two year period of time after April 1, 1993.
In support of its argument the defendant cites Corthouts v.Connecticut Fire Safety Services Corporation, 2 Conn. Cir. Ct. 34 (1963). The defendant claims Corthouts holds that an extension of CT Page 12413 the lease pursuant to an option contained in the lease does not require a new document, if, in the existing lease, at least three of the elements for a valid lease are certain: (1) the commencement, (2) the continuance, (3) the end of the term. If the lease requires of the lessee no notice of the extension, mere continuation of occupancy at the end of the original term coupled with the payment of the rent for the new term is a sufficient exercise of the lessee's option for an extension. Corthouts v.Connecticut Fire Safety Services Corporation, supra 38-39.
Corthouts v. Connecticut Fire Safety Services Corporation,
involved a commercial lease which contained the following provision, "The Lessee shall have the privilege and option to extend this lease for a period of one year from the date of expiration of the term hereof, as originally limited. The exercise of said option shall act as and shall be an extension of this lease on the same terms and conditions as those recited therein, except that the rental to be paid shall be increased to $200.00 per month". When the original one year term of this lease was over the defendant continued to occupy the premises for an additional five months paying $175.00, the original rental, for each month by a check which had printed on its face in "full payment of rent." At no time did the defendant inform the plaintiff that it was occupying the premises under its option extension nor did the defendant request that the security deposit of $175.00 be applied to the last month's rental of the original term. The defendant then quit the premises. The plaintiff found another tenant at a lesser rent and sued the defendant for breach of the additional one year lease remaining. The trial court held that the defendants continued occupancy was a mere holding over and therefore it was a tenant at sufferance. There was no exercise of an option to extend the lease. But the Appellate Division of the Circuit Court reversed and directed judgment for the plaintiff holding that the option to extend was exercised by the actions of the parties.
The defendant points out in the Corthouts case that at no time did the defendant inform the plaintiff that it was occupying the premises under option to extend. Timothy's Ice Cream, Inc. clearly sent a notice on March 30, 1993 exercising its option and therefore the defendant argues that Corthouts is decisive in this particular case.
CONCLUSION
CT Page 12414
Corthouts v. Connecticut Fire Safety Services Corporation,
validates an option to extend without a new written document if in the existing lease at the three of elements for a valid lease are certain; (1) the commencement, (2) the continuance and (3) the end of the term. There must be a meeting of minds of all the parties as to each of the essential terms and conditions of the lease for there to be a contract. Welk v. Bidwell, supra 607.
The court finds that two of the three elements in Corthouts
have not been met.
 (1) The commencement date of April 1, 1993 was clearly agreed to by the parties.
 (2) The continuance term did not involve a meeting of the minds. The plaintiff clearly operated under the incorrect impression of law that under Connecticut General Statutes § 47a-3d the tenant's holding over created a month to month tenancy. The defendant was under the impression that the five year option term was in effect
 (3) There was no agreement as to the end of the term. There was no specific agreement that the additional five year option period commencing on April 1, 1998 was agreed to or consented to by the plaintiff. Furthermore the original lease contained a right of first refusal. No evidence was provided to show that the parties had a meeting of minds as to whether or not that right of first refusal would still be in full force and effect. Didriksen v. Havens, 136 Conn. 41, 44 (1949), Johnson v. The Mary Oliver Candy Shops,
supra 89, Ackerman v. Loforese, 111 Conn. 700, 704
(1930), City Coal Co. v. Marcus, supra 459.
At common law the holding over after the termination of the lease for one year created a new term for one year. Bacon v.Brown, supra 338. This rule was nullified by statute in 1866. After 1866 the statute was applicable to both commercial and rental premises. The Appellate Division of the Circuit Court inCorthouts indicated that Connecticut General Statutes § 47-22
(now § 47a-3d) modified the Bacon v. Brown rule holding that there was no implied contract for one year after the expiration of a term for one or more years. Corthouts v. Connecticut FireCT Page 12415Safety Services Commission, supra 37.
This court has found that the clause in question is not a covenant to extend because it does not meet the last two prongs of the three prong requirement of Corthouts v. Connecticut FireSafety Services Commission, supra 38. The court further holds that this clause cannot be a covenant to renew because a covenant to renew a lease requires a new written instrument and there was no such new written instrument. City Coal Co. v. Marcus, supra 459.
Under Welk v. Bidwell, supra 607 this court has found that there was no meeting of the minds concerning the ending of the term nor the exact terms and conditions of the continuation of the lease. Under these circumstances and the findings of fact already made this court will not find a lease by implication.Chomko v. Patmon, 19 Conn. App. 486-87 (1989).
What is the legal status and relationship of the parties after April 1, 1993. The tenant did not occupy under an extended written five year lease based upon this court's finding that the option to extend was not properly exercised. The court has found there was no option to renew. Furthermore the defendant is not operating under a year to year lease. The common law rule was modified by state in 1866 after the case of Bacon v. Brown, supra 338. Connecticut General Statutes § 47a-3d clearly applies only to residential tenancies and therefore no statutory month to month tenancy was created. This court therefore finds that the termination of the lease ending on April 1, 1993 did not create any new landlord tenancy relationship between the parties.
A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated. Welk v. Bidwell, supra 608-09, Rivera v. Santiago, 4 Conn. App. 608, 609, 610 (1985). A tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay fair rental value in the form of use and occupancy for the dwelling unit. Lonergan v. Connecticut FoodStore, Inc., 168 Conn. 122, 131 (1975). The court finds that the occupancy of the defendant after April 1, 1993 was as a tenant at sufferance.
The plaintiff in her complaint alleges only one count seeking the eviction of the defendant, "lapse of time." To prove "lapse of time" there must be a tenancy which has lapsed. Bermudez v.CT Page 12416Rodriguez, H-798, December 17, 1986, (Aronson, J.); Duprey v.Bourgue, H-514, February 8, 1984 (Aronson, J.); Welk v. Bidwell,
supra 607-09, Lombardi v. Dunning, SNBR-435, 14 Conn. L. Rptr. 606
July 31, 1995 (Tierney, J.) There is no obligation to pay rent in a tenancy at sufferance and only use and occupancy payments are required.Lonergan v. Connecticut Food Store, Inc., supra 130. Non payment of use and occupancy is not grounds for eviction. ConnecticutGeneral Statutes § 47a-23(a), Rosa v. Cristina, 135 Conn. 364,367 (1949); Cohen v. Thorpe, SNBR-345, February 21, 1991, 3 Conn. Rptr. 692, (Melville, J.) 1991 Ct. Sup. 1210, 1211. A tenancy at sufferance has no beginning and no end. Lonergan v. Connecticut Food Store,Inc., supra 130.
It appears that the plaintiff is without a statutory remedy to evict the defendant. There is no allegation of a nuisance or serious nuisance. The defendant is not a tenant under a lease thus there can be no grounds for lapse of time or non payment of rent. Since the defendant once had operated under a lease there can be no eviction under Connecticut General Statutes §47a-23(a)(3) "when one had the right or privilege to occupy such premises other than under a rental agreement or lease but such right or privilege has terminated." It further appears that the plaintiff has no remedy under "never had a right or privilege."Connecticut General Statutes § 47a-23 (a)(2). There is no lease.
The plaintiff has no remedy for violation of the material terms of the lease. "Termination of lease" and "no right to occupy premises," two of the reasons contained in the notice to quit are not valid statutory grounds for eviction. ConnecticutGeneral Statutes § 47a-23a. This situation was brought about by the plaintiff's failure to act decisively for a two year period of time when the defendant, operating a struggling business, attempted to comply with the terms and conditions of the lease exercising the option in good faith and making consistent and regular tender of payments. Reference is made toP.A. 95-247, Section 1 which has amended Connecticut GeneralStatutes § 47a-23 (a)(3) effective October 1, 1995.
Judgment will enter for the defendant. The plaintiff has failed to sustain her burden of proof as to the allegations of lapse of time under Connecticut General Statutes § 47a-23(a)(A).
BY THE COURT, KEVIN TIERNEY, JUDGE CT Page 12417