[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried to the court on September 7, 2001. Thereafter, the parties submitted post-trial briefs. After considering the evidence and the arguments of the parties, the court issues this decision.
 I. PROCEDURAL BACKGROUND
The plaintiff insurance company (Amica) commenced this action by complaint, dated August 19, 1998, seeking to recover from its insured's former tenant for monies it paid as a result of damage to rental premises due to frozen pipes and radiators which burst. The complaint contains two counts, the first sounding in contract, the second in negligence. The defendant filed her answer and counterclaim, both dated October 7, 1998. In her answer, the defendant denies responsibility for the damage, and claims, in special defenses, that the leasehold had expired prior to the occurrence which gave rise to the damages; that the lessor had taken possession of the premises prior thereto; and that the lessor was fully aware that the premises were vacant.
In her counterclaim, the defendant alleges that Amica knew or should have known that she was no longer a tenant at the time the premises were damaged, and repeatedly contacted, harassed, and annoyed her in relation to this matter. She alleges that Amica's actions violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b, et seq. (CUTPA). Amica denies the allegations made in the counterclaim.
 II. FACTS
The court finds the following facts and credits the following evidence, except as noted. The court's findings are necessarily based primarily on its assessment of the credibility of the witnesses. In view of the informal business relationship at issue, the parties offered little by way of documentary evidence to support the witnesses' recollections of events.
In September or October, 1996, pursuant to an oral agreement for an CT Page 15253 indeterminate period, Barbara Dodd (Dodd) leased residential property she then owned, located at 27 South Cove Road, Old Saybrook, Connecticut, to the defendant, Christin Hughes-Leopoldino, who was then known by her pre-marriage name of Christin Rae Hughes (Hughes). In their trial briefs, the parties agree that Hughes' and Dodd's rental agreement concerning the premises was oral, and proceeded month to month. (See plaintiff's trial brief, p. 1; see defendant's trial brief, p. 1.) Based on the evidence, the court finds that they agreed to an oral, month to month tenancy.
In her answer, paragraph 4, Hughes admitted that, during the existence of her tenancy, she had a duty to keep the premises in reasonably good condition, excepting ordinary wear and tear. In her testimony, Hughes acknowledged that, while she was a tenant, it was her understanding that she had to keep the heat on in order to keep the pipes from bursting. She stated that she paid to keep the heat on until January 17, 1997. The heat was then left off, which caused the damages which are the subject of this action.
On January 18, 1997, Dodd went to the premises and found that Hughes had moved out. She also found that seven of the eight radiators located there had burst and that the boiler had cracked. At the time, Amica insured Dodd through a dwelling insurance policy. (See plaintiff's Exhibit 1.) As the result of extensive damage to the premises, Amica paid the sum of $11,847.53.[1]
Dodd credibly testified that, prior to that date, she had not been aware that Hughes intended to end her tenancy or had moved out. (See also her written statement, defendant's Exhibit A.)[2] She received a letter from Hughes, post-marked January 17, 1997, which stated that it contained a key to the premises, but did not. The letter included a note in which Hughes said that she was "sorry." Subsequently, Hughes told her that she had sent previous correspondence to Dodd and left messages for her in order to inform Dodd that she was moving out. Dodd did not receive any previous correspondence from Hughes, nor did she receive any messages from her. Hughes told Dodd that Hughes thought that Dodd would be mad at her.
The court credits Dodd's denial of recollection of any conversation with Hughes concerning Hughes' departure from the premises prior to Dodd's discovery of the damage. It also credits her denial of the assertion that she was at the premises on the previous day, January 17, 1997, and saw that the premises were in good condition at that time. Likewise, it credits her denial of recollection of receipt of a telephone call on January 17, 1997, from an unnamed individual, purportedly an attorney, who allegedly called on Hughes' behalf concerning Dodd's supposed suggestion that Hughes break into the premises to keep the pipes from freezing. CT Page 15254
Hughes saw Dodd only once, at the start of her tenancy. The court does not credit Hughes' claims that she sent a letter to Dodd in December, 1996 advising Dodd of her plan to be out of the premises, and that she left several messages on Dodd's answering machine to that effect. She acknowledged that these would have been long distance calls, which would have appeared on a phone bill if they had been made. No phone bills were presented at trial.
Also, notwithstanding her claim that she wrote to Dodd two times, once in December to advise her of Hughes' plan to leave the premises, and once in early January to send her the key, the court finds that she did not provide notice to Dodd either of her departure or her plan to depart in advance of Dodd's finding the damage on January 18, 1997.[3] Her letter to Dodd, postmarked on January 17, 1997, was too late. In addition, the court does not credit Hughes' claim that, after a purported request from Dodd on January 17, 1997, she went to the premises on that day and attempted to break in by smashing a window pane with a hammer.[4]
Concerning her counterclaim, Hughes stated that she advised Amica of her contentions concerning having given advance notice to Dodd of Hughes' departure from the premises. To support her claim that Amica harassed her concerning this matter, she stated that Amica sent her bills. She also claims that Amica contacted her twelve or fifteen times by letter or phone, but only a couple times after she gave them a statement of her position concerning the events. She did not provide any documentation in support of her harassment claim or even identify a single Amica employee who communicated with her. Even though these contacts would have had to have occurred after Hughes became aware of the damage to the premises, no written communication from Amica was presented to buttress her claim.
Karen Johnson, a claims adjuster for Amica, also testified at trial. She reviewed Amica's claim file, which, she stated, should include copies of every letter sent out by Amica concerning the matter. It contained no letters to Hughes. Instead, the file contained a memorandum of a single telephone conversation between an Amica representative and Hughes, dated December 11, 1997. (See plaintiff's Exhibit 4.)
The court finds that Amica did not engage in conduct amounting to harassment of Hughes. The credible evidence in the record demonstrates that Amica simply contacted Hughes in order to investigate the claim. The court does not credit Hughes' assertions that she was contacted excessively by Amica.
 III. DISCUSSION
CT Page 15255
Amica, as Dodd's insurer at the time of the damage to the premises, stands in her shoes as a claimant in this matter. See Fidelity CasualtyCo. v. Jacob Ruppert, Inc., 135 Conn. 307, 311, 63 A.2d 849 (1949).
Under Connecticut law, where, as here, the lessor and lessee agreed to a month-to-month tenancy, the tenancy for each month is separate from that which preceded it. See Corrigan v. Antupit, 131 Conn. 71, 76,37 A.2d 697 (1944); General Statutes § 47a-3d. Mere holding over by a tenant into a new month does not create a new contract of lease by implication. Rather, the landlord must acquiesce in the tenant's continued possession of the premises in order for such an agreement to arise. See Welk v. Bidwell, 136 Conn. 603, 607, 73 A.2d 295 (1950). "In the usual oral residential and commercial month to month tenancies if a tenant continues occupancy into the next month and there has been no communication whatsoever between the landlord and the tenant, a court would ordinarily find a new lease by implication arose on the first day of the month. . . ." Larsen v. Timothy's Ice Cream, Inc., Superior Court, judicial district of Fairfield, Housing Session at Bridgeport, Docket No. SPBR 9505 29502 (October 12, 1995, Tierney, J.) (15 CLR 411).
It is unclear on exactly what date Hughes vacated the premises. However, as she conceded, she had the obligation, while she was a tenant, to keep the premises in good condition, reasonable wear and tear excepted. Since she did not notify Dodd of her vacating of the premises or surrender the keys to Dodd before leaving, she remained responsible for damages incurred until Dodd became aware of her departure. SeeSimkins Industries, Inc. v. Bertino, Superior Court, judicial district of New Haven, Docket No. 9011-4098 (October 24, 1991, Vertefeuille, J.).
Accordingly, by turning off the heat, she allowed the pipes to freeze, causing the damages incurred. Hughes has not sustained her burden of proof as to her special defenses. First, she has not proved that her leasehold had expired prior to the sustaining of the damages. Second, she has not proved that Dodd had taken possession of the premises subsequent to the leasehold expiring and prior to the damages being incurred. Third, she has not proved that Dodd was aware that the premises were vacant at the time in question.
Under both count one, for breach of contract, and count two, concerning negligence, Hughes is liable to Amica for the amounts it expended as a result of its obligation to Dodd as her insurer. Amica is entitled to recover for the damages naturally flowing from and proximately caused by Hughes' conduct. See Heritage squared, LLC v. Eoanou, 61 Conn. App. 329,335, 763 A.2d 199 (2001).
As to the counterclaim, Hughes has not proved, as she alleged, that her CT Page 15256 lease expired on January 15, 1998. (See counterclaim, paragraph 4.) Also, she has not proved that Dodd consented to the termination of the leasehold, as alleged in the counterclaim, paragraph 5. Hughes has not proved that Amica knew or should have known through reasonable investigation that Hughes was no longer a tenant and that Dodd had retaken possession at the time in question. (See counterclaim, paragraph 9.) In addition, she has not proved that Amica harassed her or engaged in oppressive, unethical, unscrupulous or unfair conduct in violation of CUTPA. She has not proved that Amica did anything improper. See HartfordElectric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 367-368,736 A.2d 824 (1999). Accordingly, she has not sustained her burden of proof on her counterclaim.
 CONCLUSION
For the foregoing reasons, Amica has sustained its burden of proof as to each count of the complaint. Judgment may enter for Amica and against Hughes in the amount of $11,847.53. Judgment may enter against Hughes and for Amica on her counterclaim. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT